AINSWORTH SAVINGS BANK, Appellant, v. I. L. COLTHURST, Appellee.

**BILLS AND NOTES:** Holdership in Due Course—Material Circumstances.   The fact that a cashier who bought a negotiable promissory note on behalf of his bank was the agent and associate of the original payee and familiar with the latter's general course of procedure in obtaining such notes, is a very material circumstance bearing on the issue as to whether the bank was a holder in due course.

**PLEADING:** Failure to Deny Signature—Effect.   Defendant's failure to deny under oath the signature to an adverse instrument which has been pleaded as executed by him (and incorporated into the pleadings) does not create a *conclusive* presumption that the signature is genuine.   *Defendant may assume the burden to show the nongenuineness of such signature.*

**TRIAL:** Instructions—Nonnecessity to Repeat.   When a subject-matter is once fully and correctly covered in one instruction, no necessity ordinarily exists to incorporate the same subject-matter in or in

connection with other instructions dealing with other subject-matters.

**TRIAL:** Instructions—Construction of Written Contracts. Written
4  contracts must be construed by the court.

**BILLS AND NOTES:** Holdership in Due Course—Evidence of Fraud.
5  Fraud in the inception of a negotiable promissory note may be
established, in an action by the transferee of the note, by the same
evidence by which it would be established in an action by the original payee.

**APPEAL AND ERROR:** Waiver—Insufficient Record. Errors predi-
6  cated on the reception in evidence of exhibits which are set forth
in the abstract by reference and partial description only, may not
be considered.

*Appeal from Washington District Court.*—HENRY F. WAGNER,
Judge.

NOVEMBER 13, 1923.

REHEARING DENIED FEBRUARY 16, 1924.

SUIT upon promissory notes bought by an indorsee thereof.
The defendant pleaded many affirmative defenses, the chief of
which was that the notes were obtained by fraudulent repre-
sentations and were without consideration, and that they were
negotiated in breach of faith. The plaintiff, by way of reply,
pleaded an estoppel. It also produced evidence which tended to
show that it was a holder in due course without notice. There
was a verdict for the defendant and judgment thereon. The
plaintiff has appealed.—*Affirmed.*

*Livingston & Eicher,* for appellant.

*Morrison & Morrison* and *R. P. Howell,* for appellee.

EVANS, J.—I.  The notes in suit were for a total of $8,000.
The consideration therefor was to be found in a written con-
tract, executed concurrently therewith, whereby the maker pur-

**1. BILLS AND NOTES: holdership in due course: material circumstances.** ported to purchase California lands from the Daniel Hayes Company. The contract purported to sell subject to inspection by the buyer, and subject to his right to reject the land, if not satisfied therewith, and to demand back the consideration therefor. Inspection of the land was made by the maker within the time provided, and the land was rejected as not conforming to representations, and demand was made for the return of the consideration. In the meantime, the notes had been already negotiated to the plaintiff bank, and this was done within a couple of days from the date of their execution.

The evidence of fraud in the transaction and of breach of faith in the negotiation of the notes was sufficient to go to the jury, and we shall spend no time in its discussion. The real fighting ground of the case included two issues:

(1)   Was the plaintiff a holder in due course?

(2)   Was the defendant estopped from setting up his defense as against this plaintiff?

On the first issue, the evidence was quite sufficient to go to the jury. We shall have no occasion to go into the details of the evidence on that issue. One circumstance, however, may be mentioned as having far-reaching significance. The defendant was closely associated with the plaintiff bank. He was a director thereof, and transacted business therein. His notes were purchased by the cashier of the bank. This cashier had already permitted himself to become an agent or subagent of the Daniel Hayes Company, whose principal representative in the transaction was Lalor. He had an arrangement with Lalor for a commission in this transaction and others. He knew the general character of the contract for which the notes were given. He may not have been conscious that a fraud was being perpetrated. If that were material, it would yet be a question for the jury.

Upon the second issue above stated, the appellant put special emphasis. Plaintiff pleaded in its reply, by way of estoppel, that, before it purchased the note in question, the maker, defendant herein, caused to be delivered to the plaintiff an instrument in writing, duly signed by the defendant, as follows:

**2. PLEADING: failure to deny signature: effect.**

"S. A. Stephens, Cashier,

"Ainsworth Savings Bank,

"Ainsworth, Iowa.

"Sir: I have this day given my notes for $8,000 to purchase land, and it will be satisfactory with me for you to purchase this paper and make customary settlements with Mr. S. P. Lalor for same.

"Respectfully,

"I. L. Colthurst."

The defendant filed no pleading responsive to such plea of estoppel, but relied upon the statutory denial of the affirmative allegations of a reply. In no other way was issue made upon the plea of estoppel contained in plaintiff's reply. Upon the trial, the plaintiff put the instrument in evidence. The defendant, as a witness, denied the execution thereof, and in effect denied the genuineness of the signature thereto. The admissibility of this evidence was challenged by the plaintiff, on the ground that the genuineness of the signature had not been denied under oath by any pleading or writing, as provided by Code Section 3640. Such section is as follows:

"When a written instrument is referred to in a pleading, and the same or a copy thereof is incorporated in or attached to such pleading, the signature thereto, and to any indorsement thereon, shall be deemed genuine and admitted, unless the person whose signature the same purports to be shall, in a pleading or writing filed within the time allowed for pleading, deny under oath the genuineness of such signature. If such instrument is not negotiable, and purports to be executed by a person not a party to the proceeding, the signature thereto shall not be deemed genuine or admitted, if a party to the proceeding, in the manner and within the time before mentioned, states under oath that he has no knowledge or information sufficient to enable him to form a belief as to the genuineness of such signature. The person whose signature purports to be signed to such instrument shall, on demand, be entitled to an inspection thereof."

The argument for plaintiff is that, in the absence of a written denial under oath, no issue was tendered on the question of signature, and that, therefore, the genuineness of such signature

should be deemed conclusively proved or admitted.   If the question were an open one, the argument would be very persuasive.   But this statute has been in effect for more than 50 years, and has been repeatedly construed in this regard.   The substance of that construction is that, if the purported maker of the instrument fail to conform to the provision of this section, then he relieves the plaintiff of the burden of proof on that question.   He may, nevertheless, by an unverified general denial or by a statutory denial put the question of genuineness in issue, with this qualification: that the burden of such issue will be upon the defendant, and not upon the plaintiff.   In such a case, the signature is deemed *prima facie* genuine, and the plaintiff may put the instrument in evidence without further proof; but the defendant may, nevertheless, assume the burden of attack upon its genuineness.   Such is the uniform holding of our cases. *Douglass v. Matheny,* 35 Iowa 112; *Sankey v. Trump,* 35 Iowa 267; *Ashworth v. Grubbs,* 47 Iowa 353; *Sully v. Goldsmith,* 49 Iowa 690; *Brayley v. Hedges,* 52 Iowa 623; *Smith v. King,* 88 Iowa 105.

In the submission of the case at bar, the trial court laid the burden upon this issue upon the defendant.   The appellant, therefore, has no ground of complaint at this point.

II.   Complaints are made of certain instructions.   One of these is directed against Instructions 14, 15, and 23, on the general ground that they ignored the question of estoppel or waiver which had been pleaded by the plaintiff.

3. TRIAL: instructions: nonnecessity to repeat.   Instruction 14 defines "a holder in due course," and instructs the jury that, if the plaintiff was such, it was entitled to recover, regardless of any fraud or failure of consideration or breach of faith in the negotiation.   Instruction 15 defines the distinction between the rights of the holder in due course and a holder not in due course.   No reference is contained in these instructions to the question of waiver or estoppel.   That question was fully dealt with in other instructions, and we see no appropriate reason why any attempt should have been made to incorporate that subject in either of these instructions.   What is here said is alike applicable to Instruction 23.

III.   Error is assigned and argued to the effect that the

court, in its instructions to the jury, definitely construed a certain provision of the contract, whereas such provision was ambiguous in its terms, and was capable of a different meaning from that which the court gave to it; and that the jury should have been permitted to determine the meaning and intent of such provision of the contract, in the light of all the circumstances surrounding the parties, as disclosed by the evidence. Such is appellant's contention. No authorities are cited in support thereof. We know of none. The general rule is without doubt that, when parties put their contract in writing, the contract is to be construed by the court, as a matter of law, and not by the jury, as a question of fact. If exceptions to this rule are conceivable by reason of the nature of the ambiguity and its relation to disputed circumstances surrounding the parties, nothing is pointed out in this record which could operate as such an exception.

4. TRIAL: instructions: construction of written contracts.

IV.    Certain evidence was admitted on behalf of the defendant, as tending to prove the alleged fraud perpetrated by the payee of the note in the inception of the transaction out of which it grew. It is urged that much of this evidence was not admissible as against this plaintiff, even though it were admissible against the Daniel Hayes Company. It was incumbent upon the defendant to prove the fraud in the original transaction. The plaintiff was not a party to such original transaction or to the fraud. Such evidence, therefore, could not involve anything said or done by this plaintiff. Was the evidence for that reason inadmissible? If such were the rule, then the maker of the note could seldom prove the initial fraud upon which to predicate a defense. The rule is well settled that the defendant may prove such fraud by whatever evidence would have been admissible as against the payee, before he negotiated the note. Granted that the indorsee is not responsible for the initial fraud, nor for the evidence produced in proof thereof, neither is he hurt thereby, if he prove his ignorance of the fraud. If he had no notice of the alleged fraud, at the time of his purchase, this is his sufficient and adequate protection against the evidence of the payee's fraud, over which indorsee had no control, and for which he had no responsibility.

5. BILLS AND NOTES: holdership in due course: evidence of fraud.

V.   Various exhibits were put in evidence by the defendant, the admissibility of each of which is challenged by the appellant. These are briefly argued, in blanket form.   The record is not in

6. APPEAL AND ERROR: waiver: insufficient record.

a condition to justify us in considering them seriatim.   None of them are set out in the brief, nor are they to be found in the abstract, except by a search of page by page, without any aid of an index.   We are very dependent upon a good index for a ready search of details in a record.   We cannot devote time to a second and third reading of an abstract, simply to find particular details.   Appellant's original abstract contains no index.   Its first amendment contains none.   Its second amendment supplies the index in very imperfect form.   Its only indexing of the evidence consists in giving the names of witnesses, with the pages upon which their testimony may be found.   We can get little aid from such a form of index.   It contains no reference to any exhibit, either by number or by description of its nature.   We are, therefore, required to search for each exhibit.   Our search discloses that the exhibits themselves are not set forth, except by reference and partial description.   Upon this state of the record, we shall treat the alleged errors as waived.   We may say, however, that we are not favorably impressed with the tenability of any of them.   The judgment entered below is, accordingly, affirmed.— *Affirmed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.