[No. 27502.   Department Two.   November 29, 1939.]

ROBERT MURRAY *et al., Respondents,* v. MARJORIE
BARBARA ODMAN, *Individually and as
Executrix, et al., Appellants.*[1]

[1]Reported in 96 P. (2d) 489.

*Padden & Moriarty,* for appellants.

*Mifflin, Mifflin & Mifflin* and *Mason Wheeler,* for respondents.

STEINERT, J.—Plaintiffs brought this action to compel specific performance of the extension provision of a lease and to have the court determine the rental value of the premises during the additive portion of the term. The court decreed specific performance and fixed the amount of rental for the sequent period. Defendants have appealed.

On July 19, 1933, Amy White leased, for a term of years, to Fred R. Sparger and W. L. Wood, copartners, an unimproved tract of land, described by lot and block number, in the city of Seattle. As consideration for the lease, the lessees covenanted to pay a rental of thirty-six hundred dollars in thirty-six successive monthly installments of fifty dollars each, followed by twenty-four successive monthly installments of seventy-five dollars each, and to construct a building on the premises at their sole cost and expense.

There was no provision in the lease denoting the character or value of the building to be constructed. However, it was stipulated that the lessees should not remove from the premises any buildings or improvements constructed thereon; and that, at the expiration of the lease, any such buildings and improvements,

whether erected by the lessees or by their successors or transferees, should be and become the sole and exclusive property of the lessor, free and clear of any right, title, interest or equities of the lessees, their successors or transferees.

The lease further provided that the lessor should be permitted to sell the premises described, subject to the terms of the lease, at any time that she had a *bona fide* offer for the sale thereof; but that, in such case, the lessees should have the first opportunity to purchase the property at the same price and upon the same terms as those contained in such *bona fide* offer. Reciprocally, the lease provided that, if the lessees desired to dispose of the improvements erected upon the property demised, the lessor would consent to a transfer of the lease to the purchaser, but that such transfer should not relieve the lessees from payment of the rentals reserved for the full period of the demise. It was also stipulated that the lessor should pay the taxes and assessments on the real property only, and that the lessees should pay the taxes on the improvements.

The following paragraph of the lease is the one out of which this controversy arose:

"In the event that the landlord is the owner of this property at the end of this present five (5) year term, and does not desire to sell this property, then the tenants have the right to extend this lease upon its present term with the exception that the rental for the two year extended term shall be at such reasonable monthly rental as the parties hereto shall mutually agree upon."

This paragraph of the lease contained the only reference to the length of the term or to the method by which the rental for the extension period was to be determined.

In conclusion, the lease provided that the covenants and agreements therein contained should extend to and be obligatory upon, and inure to the benefit of, not only

the lessor and lessees, but also their respective successors, heirs, executors, administrators, and assigns.

The lessees entered into possession of the premises and erected thereon, at a cost of approximately five thousand dollars, an imitation log building designed for use as a tavern or restaurant. However, in less than a year the business conducted on the premises by the lessees proved a failure, and, as a result, they assigned all their interest to a commercial agency for the benefit of creditors. A few months later, the lease was assigned to an individual with whom respondent Robert Murray was associated as a silent partner. The business was then conducted as a partnership for about three years, but afterwards was transferred to respondents, who also became the owners of the lease by assignment. They subsequently added further improvements to the building to the extent of about thirteen hundred dollars in value.

Amy White, the lessor, died in March, 1937, leaving a will in which the leased property passed, by the residuary clause, to her daughter and grandchildren, all of whom are appellants herein.

Shortly before the expiration of the five-year term, respondents notified appellants, in writing, that they elected to extend the term of the lease, as therein provided, for two additional years, and offered to negotiate the matter of the monthly rent to be paid during the extension period.

Appellants have not desired, nor offered, to sell the property, but have, in all respects, retained full ownership thereof. In the negotiations concerning the rental during the two-year period, respondents took the position that the reasonable value thereof was seventy-five dollars per month. Appellants would not consider less than two hundred dollars. Respondents thereupon brought this action, and appellants promptly filed a

cross-complaint, pleading unlawful detainer and demanding immediate possession of the property.

Appellants do not now dispute respondents' right to have the term of the lease extended. The only question here involved is the matter of the reasonable rental to be paid by respondents during the extension period.

The point upon which the parties are at issue is whether the monthly amount to be paid should be merely a ground rental, as respondents contend, or whether the computation should take into consideration both the land and the improvements thereon, as appellants contend. The trial court held with respondents.

The whole difficulty with the case is that the lease failed to specify the basis upon which the rental for the extension period should be computed.

At the outset, it may be stated, that, since there was no agreement to the contrary, the building became, during the course of its erection, a part of the land. *Toellner v. McGinnis,* 55 Wash. 430, 104 Pac. 641, 24 L. R. A. (N. S.) 1082. That fact, however, is not, of itself, determinative of the particular question with which we are now concerned.

It is well settled in this state that a contract of lease must be read as a whole, and, when so read, the intention of the parties must govern. *Toellner v. McGinnis, supra; Gates v. Hutchinson Inv. Co.,* 88 Wash. 522, 153 Pac. 322; *Wilsonian Inv. Co. v. Swope,* 180 Wash. 35, 38 P. (2d) 399.

It is also a familiar rule that, if the provisions of a lease be doubtful, in that they are reasonably capable of more than one interpretation, the court will adopt that interpretation which is the more, or most, favorable to the lessee. *Gates v. Hutchinson Inv. Co., supra; Salzer v. Manfredi,* 114 Wash. 666, 195 Pac.

1046; *Diettrich v. Newberry Co.,* 172 Wash. 18, 19 P. (2d) 115; *National Bank of Commerce of Seattle v. Dunn,* 194 Wash. 472, 78 P. (2d) 535.

There is no extrinsic evidence in this case which throws any light upon the intention of the original parties to the lease as to the basis upon which the rental for the extension period was to be determined. We must, therefore, look to the lease alone.

It will be noted that the lease provided that, conditioned upon continued ownership of the premises by the lessor, the lessees "have the right to extend this lease upon its present term." Although the lessor died prior to the expiration of the original term, the conditional requirement has been specifically met and satisfied through the operation of that provision which extended the covenants, agreements, and obligations of the lease to the successors, heirs, and assigns of the respective parties. In short, the situation as between the present parties is the same as it would have been were the original lessor and lessees the real parties to this action.

It is the generally accepted rule that a covenant for the extension of the term of a lease, at the option of the lessee, operates, upon the exercise of the privilege, as a present demise for the full term to which it may be extended, and not as a demise merely for the shorter period with the privilege of a new lease for the extended term. 16 R. C. L. 885, § 389; 35 C. J. 1026, § 160; Tiffany on Landlord and Tenant, 1514 *et seq.,* §§ 218-219; McAdam on Landlord and Tenant (5th ed.), 710, 711, 726; Jones on Landlord and Tenant, § 337; Underhill on Landlord and Tenant, § 803 *et seq.* For an interesting discussion of options for extension and of the rule of construction of ambiguous or restrictive provisions of a lease, see *Mutual Paper Co. v. Hoague-Sprague Corp.,* 8 N. E. (2d) (Mass.) 802:

Inasmuch as the respondents herein exercised their option, the covenant for extension operated as a present demise of the land for the full term of seven years. From this it follows that the construction of the building formed part of the consideration, not merely for the original five-year period, but for the entire term as extended. While this conclusion would not of itself necessarily determine the basis upon which the *amount* of the rental during the extension period was to be fixed, it lends support to the inference that the payment of ground rent only was to continue, but on the basis of its reasonable value at that time.

That the lessees, their successors and assigns, had a continuous interest in the improvements, when constructed, is made manifest by the lease itself, for it was only upon the expiration of the lease that the buildings and improvements were to become the sole and exclusive property of the lessor, free and clear of any right, title, interest or equities of the lessees, their successors or transferees. Moreover, the lessees were, and will be, required to pay the taxes on the improvements during the entire term. Furthermore, the lessees were given the right to dispose of the improvements during the term of the lease, subject, of course, to all its other provisions. These considerations, though not decisive of the present question, furnish added support for the conclusion that the amount of rent to be paid during the extension period was to be determined on the basis of ground rent.

It may be conceded that appellants' interpretation of the particular provision is not altogether unreasonable. In support of such interpretation, it might well be argued that respondents' interest in the improvements terminated at the end of the five-year period because the lessor had the right to sell the property at that time, in which event the lessees could not have

exercised an option to extend the lease and, accordingly, would have lost all interest in the improvements, and, in fact, would have had to pay for them as part of the land had they desired to meet the offer of a *bona fide* prospective purchaser of the property. From this, it might be concluded that respondents should pay, during the extension period, a rental based upon the value of both the land and the improvements.

On the other hand, the interpretation which the respondents insist upon is, we think, equally logical and tenable, for the reasons already given.

If we look at the situation confronting the original parties to the lease at the time of its execution, we note that the lessor then had but a bare lot of ground. It may well have been that she was then primarily interested in holding the land as an investment or for its speculative increase in value and, in the meantime, was desirous of having it earn a fair return upon her original investment. As business conditions in the surrounding district improved, the value of the lot would naturally tend to increase. The construction of a building, such as was contemplated by the parties, would no doubt contribute to the general improvement, but, because of its peculiar and temporary character, would not, of itself, add much to the value of the ground. While these considerations are largely conjectural, they have a degree of probability and at least suggest that the lessor's chief concern was to obtain ground rent for the lot during the entire term of the lease.

However, whatever difference of view there may be as to the interpretation of the instrument, certain it is, we think, that its language calls for construction, and that either of the two interpretations that have been placed upon it might logically and reasonably be advanced and adopted.

It was within the power of the lessor to obviate the ambiguity and uncertainty to which the lease was susceptive. It was, therefore, her duty to see that the instrument which she offered to the lessees clearly expressed her intention, whatever that may have been. Under the principle of *contra proferentem,* we are constrained to adopt that interpretation which is the more favorable to the lessees and hold that the rental should be fixed on the basis of ground rent only.

Upon the question of the rental value of the land alone, the decision of the trial court is amply supported by the evidence in the case.

The decree is affirmed.

BLAKE, C. J., BEALS, JEFFERS, and GERAGHTY, JJ., concur.

