GEORGE S. MARTY, Appellant, v. CHAMPLIN REFINING COMPANY, an Iowa corporation, and CHAMPLIN REFINING COMPANY, a New Mexico corporation, Appellees.

No. 47364.

(Reported in 36 N. W. 2d 360)

March 8, 1949.

Breese & Cornwell, of Mason City, for appellant.

Smith & Beck, of Mason City, and Scarritt & Champlin, of Enid, Oklahoma, for appellees.

WENNERSTRUM, J.—Plaintiff, the owner of real estate in Mason City, Iowa, sought recovery in a law action of claimed damages which he asserts resulted from the removal by the defendants of an automobile lift and air compressor, pumps, and signs placed upon the property of the plaintiff during the period one of the defendants was in possession of the leased property as a tenant. It is the claim of the plaintiff that the previously referred to items became a part of the realty while the

defendants maintain they are trade fixtures which they had a right to remove prior to the expiration of the lease.

At the close of the plaintiff's evidence the trial court withdrew from the consideration of the jury the issue as to damages pertaining to the removal of the automobile lift and air compressor. The plaintiff on his part withdrew any claim for damages for the removal of pumps and signs. The trial court also withdrew from the consideration of the jury any evidence of claimed declarations of defendants' agent made at the time of the negotiations for the lease and submitted only the question as to damages for necessary repairs to the filling station and also for the damages resulting from the removal of a wall. The jury returned a verdict for the plaintiff on the limited claim for damages as submitted. The plaintiff has appealed from the judgment and assigns error on the part of the trial court in withdrawing the previously referred to issues and evidence from the jury.

On May 2, 1927, George S. Marty, the appellant, entered into a written lease with the Champlin Refining Company, an Iowa corporation, for certain real estate in Mason City, Iowa, for a term of ten years from July 1, 1927. Inasmuch as portions of the original lease and a renewal lease must receive consideration in our determination of this case we hereinafter set forth portions of the leases which are involved in this litigation. A part of the original lease is as follows:

"Second party shall have the right to construct and erect upon said premises any building or buildings as it may desire for the operation and maintenance of an oil station and shall have the right to place on said premises all equipment and apparatus used by it in the necessary operation and maintenance of its said business, including tanks, pumps, air compressors and any and all property of any kind or description necessary in the operation of said business * * *.

"It is further agreed between the parties hereto that at the termination and expiration of this lease, if the rent due, including water rents, shall have been fully paid, the second party *shall have the right to remove all equipment and apparatus used by it in the operation and maintenance of its said business,*

*including tanks, pumps, air compressors and any and all property of every kind and description used in the operation of its said business* except the underground piping and concrete drives to be purchased by second party.

"* * *

"It is further stipulated and agreed that should the party of the first part extend this lease for a period of ten (10) years on the same terms, after the expiration of this lease, that all the buildings and improvements placed on the above-described property by the party of the second part shall, at the expiration of the extension of said lease, become the absolute property of the party of first part." (Italics supplied.)

On February 14, 1935, the original lease was extended for a period of ten years and the extension agreement is in part as follows:

"Whereas, the party of the second part is desirous of erecting a grease building on said property; and

"Whereas, party of the second part does not desire to erect said building on said property without an extension of its present lease; and

"* * *

"IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:

"That the party of the first part for and in consideration of the rents to be paid and the covenants and agreements hereinafter mentioned to be performed by the said party of the second part, has extended, *and does hereby extend the attached lease* for the term of ten (10) years from and after the 1st day of July, 1937.

"* * *

"It is also expressly understood and agreed, by and between the parties hereto, that nothing herein contained shall operate to discharge or release party of the second part, its legal representatives or assigns, from the liabilities to fulfill, keep and promptly perform, as well in spirit as in letter, each and all of the covenants contained in the *original lease attached hereto and made a part hereof.*" (Italics supplied.)

It is the claim of the appellant that the lease and the ex-

tension agreement are indefinite and uncertain and that oral evidence of the real agreement should be received in explanation thereof. The appellees maintain, however, that the lease and extension agreement can and should be interpreted by the court and that no oral evidence is admissible to vary or change the terms of the written agreement. The appellant claims that the automobile lift and air compressor became a part of the realty in that they constituted "improvements" and under the terms of the lease and extension became the property of the appellant. The appellees contend that these items were trade fixtures and under the accepted interpretation of trade fixtures and by the terms of the lease they remained the property of the appellees with the right to remove them from the leased real estate prior to the expiration of the extension agreement. The trial court in passing upon the motion to withdraw certain items of claimed damages from the consideration of the jury said, in part:

"* * * it is provided in the original lease that at the termination and expiration of the lease, if the rent due including water rent shall be fully paid, the second party shall have the right to remove all equipment and appliances used in the operation and maintenance of said business including tanks, pumps and so forth, used in the operation of said business except the underground piping and concrete drives to be purchased by second party. Now the extension agreement which was drawn by the plaintiff himself provides that * * * all of the said improvements now on said premises or to be placed thereon in accordance with this agreement or at any future time including the concrete drives, underground tanks and pipes shall at the expiration of this extension agreement become the property of the party of the first part absolutely and then it provides the same thing in case of forfeiture. But down here at the end of this lease it says it is expressly understood and agreed by and between the parties hereto that nothing herein contained shall operate as a discharge or release of the party of the second part, its legal representatives or assigns from liabilities to fulfill, complete and promptly perform as well in spirit as in letter each and all of the covenants contained in the original lease attached hereto and made a part hereof, so the original lease was still

in effect and ran until the first day of July 1947 and the provision as to the company removing this apparatus is still in full force and effect. There is no ambiguity about it. There might have been if the original lease hadn't been kept in full force and effect * * * but with that there is just nothing to it, so the court withdraws all evidence in regard to the removal of the automobile lift and the air compressor from the consideration of the jury, so the only thing left in this lawsuit is the question which has been admitted to the matter of the repairs and the damage by reason of the removal of the wall. That is still in."

In a letter written November 15, 1934, to the appellant by the company and apparently dictated by one A. H. Holland, a representative of the appellees, it was stated:

"The air lift referred to in the fourth article in your letter is an item of equipment that should not be included in the property to be turned over to you at the end of the lease but this is a minor consideration which can be adjusted when the other details of the program have been worked out."

This letter was written during the negotiations relative to the extension agreement. The article four referred to in the Holland letter pertains to a portion of a letter written by the appellant wherein certain suggested terms of a renewal lease are set out. The applicable portion of that letter is as follows:

"4. At the expiration of the present agreement and the extension agreement all of the permanent improvements which you have on the lot at the present time, and which you might erect on said lot during the period of this lease and extension agreement, including the underground tanks, air lift and driveways, shall become my property absolutely."

The appellant testified that in a later conversation between Mr. Holland and himself they "arrived at an agreement with reference to what the extension agreement should be." Inasmuch as it is claimed that in this conversation it is indicated what was meant to be included in the extension agreement we shall set out a portion of appellant's testimony:

"Q. What was the conversation with reference to the lift and the other equipment and so forth that were to be placed on the premises?

"Mr. Smith: The defendants object to this conversation as being clearly incompetent, immaterial, Mr. Holland is dead, he cannot testify, and all these conversations are merged in the contract; such conversations and negotiations are never competent to change or vary the conditions of the contract.

"The Court: Overruled. Exceptions.

"A. Well I remember that conversation pertained, first Mr. Campbell [Mr. Holland] came to the office and submitted a sketch locating the building, the grease building next to the building, to the present building, for economical purposes and I told him, no I couldn't, I didn't want that, I wanted the grease building located at the west end so that if at any time I wanted to erect a store on that property that I could by extending the building to Federal Avenue and make a store out of it.

"Mr. Smith: Pardon me just a minute, is this a conversation with Mr. Holland or who? A. With Mr. Holland in the office.

"Mr. Smith: I thought you said Mr. Campbell. A. No, Mr. Campbell was never in the office. * * * Mr. Holland said, well that isn't a very economical way to operate a station with the buildings off in the corner * * * then when this extension agreement is over, we will comply with the last part of that original lease which provided that everything comes over to me. In other words, you fellows take your property and walk out; that meant I was to get the lift and the wash and all, there was to be no disturbance at all on the property and that was the reason I offered the thousand dollars; I readily understood, I have been attorney for the Mason City Oil and Grease Company, and the Champlin Refining Company since 1920, I knew what it was, I knew it wasn't an economical operation and I therefore offered him this amount, they themselves already charged off the amount of the improvements— * * *

"Q. (By Mr. Cornwell) With reference to the lift and the compressor, what was the statements made by yourself and Mr. Holland, your agreement on that? A. They were to re-

332

main in the building, nothing was to be disturbed. Q. You are talking about a conversation? A. Yes that was said at that conversation.

"Mr. Smith: We move to strike that answer on the ground that it is incompetent, immaterial, seeking to vary by parol the terms of a written contract.

"The Court: Overruled. The answer may stand. Exceptions.

"The extension agreement was not drawn that day. It was mailed to Mr. Holland as I remember it."

I. Concerning the claimed errors of the trial court we should and necessarily must give consideration to the two leases in question. It should be kept in mind that in the original lease it was provided that if certain conditions were carried out "* * * the second party shall have the right to remove all equipment and apparatus used by it in the operation and maintenance of its said business, including tanks, pumps, air compressors and any and all property of every kind and description used in the operation of its said business except the underground piping and concrete drives to be purchased by second party."

In the same lease it was provided "that all the buildings and improvements placed on the * * * property by the party of the second part shall, at the expiration of the extension of said lease, become the absolute property of the party of the first part." In the extension agreement heretofore quoted it will be observed that reference is made to "the original lease attached hereto and made a part hereof." In this extension agreement it is further observed that in referring to the new building to be erected it is stated that "* * * said building to be erected not later than May 1st, 1935, and all of said improvements now on said premises, or to be placed thereon in accordance with this agreement, or at any future date, including concrete drives and underground tanks and piping, shall, at the expiration of this Extension Agreement, become the property of the party of the first part absolutely." Later in the extension agreement it is stated that upon "failure of the party of the second part to carry out any part of this extension

agreement, or the lease attached hereto, *all the improvements placed on said premises shall become the property of the party of the first part, absolutely."* (Italics supplied.) Inasmuch as the extension agreement made reference to the building to be erected it is logical that the "improvements" therein mentioned, as well as the same term used in the original lease, referred to the building or buildings erected or to be erected thereon. This seems especially true when we keep in mind that the original lease reserves to the second party "the right to remove all equipment and apparatus used by it in the operation and maintenance of its said business, including tanks, pumps, air compressors and any and all property of every kind and description used in the operation of its said business except the underground piping and concrete drives to be purchased by second party." It is apparent from the two leases that there was a distinction drawn between "equipment and apparatus used * * * in the necessary operation and maintenance of * * * said business" and "the buildings and improvements."

█ It is the rule in Iowa where under an original lease the right to remove personal property, without material injury to the real estate, was permitted, this right and privilege was continued by an extension agreement, even though no mention is made of such agreement in the second or extension lease. McCarthy v. Trumacher, 108 Iowa 284, 286, 78 N. W. 1104; Union Terminal Co. v. Wilmar & S. F. R. Co., 116 Iowa 392, 397, 90 N. W. 92; Daly v. Simonson, 126 Iowa 716, 720, 102 N. W. 780; Ray v. Young, 160 Iowa 613, 625–629, 142 N. W. 393, 46 L. R. A., N. S., 947, Ann. Cas. 1915D 258; annotations 110 A. L. R. 483. See also note in 18 Iowa L. Rev. 527.

We are of the opinion that the rule of law previously set forth has application to the facts in the present case. This is particularly true where the original lease is specifically referred to and made a part of the extension lease.

II. It is apparent from the evidence presented by the appellant that the air lift and compressor were used by the appellee company "in the operation and maintenance of its said business" and that these two previously mentioned items should be construed to be included in the items which the appellee had the right to remove under the original lease inasmuch

as said lease referred particularly to "air compressors and any and all property of every kind and description used in the operation of its said business * * *."

From the testimony of appellant's witnesses it is shown that the air compressor and air lift were used in the operation of appellees' business. V. C. Stueland, a witness for appellant, testified on cross-examination, that lifts or hoists "are used in filling stations for one purpose and that is to raise the automobiles and trucks * * * to get them in the air so you can walk under them and service them. It is part of the filling station equipment for the service of customers. * * * In order to grease cars, they have to be hoisted, to raise them up in the air. * * * Your air compressor is really part of the lift; it is the operating part. * * * The main purpose of the air compressor is to operate the lift up and down. It is also used to inflate tires * * *. Both the lift and the air compressor are special apparatus for filling stations." H. L. Cope, an employee of one of the appellees, but called as a witness by appellant, testified in part: "In the north room was a Globe hoist. * * * It catches the axle. That is used for any service that they might want to render in that type of business. * * * You have to have an air compressor with a line running to a central control lever * * *." This witness further testified that after the removal of the hoist he filled the hole from which this equipment had been taken and placed concrete over it.

Inasmuch as appellant's witnesses termed the hoist and compressor as equipment we are justified under the entire record in holding that the appellees had the right to remove these items under the provisions of the original lease.

■■ III. It has been the holding of this court that where a question arises whether certain types of personal property attached to the realty by a tenant are trade fixtures this question ordinarily should be submitted to the jury for its determination. Winnike v. Heyman, 185 Iowa 114, 118, 119, 169 N. W. 631; Lamble v. Schreiber, 236 Iowa 597, 600, 19 N. W. 2d 669; Walker v. Puck, 236 Iowa 686, 689, 8 N. W. 2d 701. In each of these cases the general rule is set forth that three general tests should be applied in determining a particular case, to wit:

(1) annexation to the realty, either actual or constructive (2) adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated and (3) intention to make the article a permanent accession to the freehold. In the instant case, in the light of the evidence presented and the leases involved such a determination by the jury is unnecessary.

IV. Where the question relative to the right to remove claimed fixtures is governed by the express provisions of a lease, the question is one of law. 22 Am. Jur., Fixtures, section 77, page 799. See also 12 Iowa L. Rev. 444, 445. It is the further rule that "when parties put their contract in writing, the contract is to be construed by the court, as a matter of law, and not by the jury, as a question of fact." Ainsworth Savings Bank v. Colthurst, 197 Iowa 363, 368, 195 N. W. 581, 583. See also Comptograph Co. v. Burroughs Adding Mach. Co., 179 Iowa 83, 108, 159 N. W. 465. .

V. We have heretofore set forth the testimony of the appellant in order that it might be shown what he claimed was the conversation between Mr. Holland and himself. Admitting that the record may not accurately set forth what was stated by the witness yet as presented to us we cannot see how this testimony in any way clarifies the terms of the lease. It in no way aids in the interpretation of the lease except as it may show what appellant considered to be the agreement. But the appellant, after this claimed conversation, prepared the extension agreement and mailed it to the appellee. We have concluded that the rule that a contract is construed strictly against the one who draws it has application in this instance inasmuch as the appellant is shown to have prepared the extension agreement after correspondence and conversations with a representative of the company. Andrew v. Austin, 213 Iowa 963, 968, 232 N. W. 79. We especially think this rule is applicable when we consider the statements incorporated in the letters to which reference has heretofore been made. Then too, it is a recognized rule that parol evidence is inadmissible in an action at law to add to a written instrument and thus vary or change its terms. Dolan v. Danbury State Bank, 207 Iowa 597, 601, 223 N. W.

400; Cox v. Fleisher Constr. Co., 208 Iowa 458, 463, 223 N. W. 521. A different rule, of course, is applicable where there is ambiguity in the lease. Ainsworth Savings Bank v. Colthurst, supra. We find no ambiguity in the leases. Especially is this true in the light of the testimony of appellant's own witnesses.

VI. We might extensively discuss the law and rule announced by this and other courts relative to trade fixtures. We do not deem it necessary in the light of the evidence presented and the leases in question. Were it not for the record and the two leases in the instant case we would be justified in holding that it was a question for the jury to decide whether or not the items in controversy were trade fixtures under the authorities set out in Division III hereof. However, the record is such that we feel the court was justified in withdrawing the issue pertaining to the removal of the air compressor and air lift from the consideration of the jury. Upon the contentions as presented by the appellant we have concluded they are without merit and that the trial court should be affirmed.—Affirmed.

MANTZ, C. J., and OLIVER, HALE, GARFIELD, SMITH, MULRONEY, and HAYS, JJ., concur.