19811

Herbert G. MYERS et al., Respondents, v. Helen T. CORNELIUS et al., Appellants

(205 S. E. (2d) 180)

*J. M. Long, Jr., Esq.,* of Conway, *for Appellants,*

*H. C. McCaskill, Esq.,* of Conway, *for Respondents,*

April 23, 1974.

LITTLEJOHN, Justice:

This action was instituted pursuant to South Carolina Code § 10-2001 *et seq.* (1962) for a declaratory judgment construing a recorded lease agreement affecting property situate in Myrtle Beach, South Carolina. The lease was assignable, and it is only necessary here to refer to the plaintiffs-respondents as the lessees and to the defendants-appellants as the lessors, although the former own their leasehold by virtue of a series of assignments. It is stipulated that the plaintiffs bought the lease for $230,000 in 1970 and have succeeded to all the rights enjoyed by the original lessees.

On October 4, 1958, the lessors leased three lots to the lessees for a term of twenty years ending October 3, 1978, with "the option of renewing this lease for an additional ten (10) year period." The property was leased as vacant land, and the rental schedule set forth in the agreement for the original term was based upon its value as vacant land. The rent was $1,500 per year for the first three years and thereafter increased in $500 per year increments until the tenth year, when the rent became $5,000 annually for the tenth through the twentieth years.

The lease further provided that the lessees "shall construct upon these premises a building or buildings of masonry construction according to plans and specifications of their choice, provided that the same is in keeping with the surrounding community and conforms to the building code of the Town of Myrtle Beach," in which they "will maintain and operate a motel, apartment house or motel business."

In fulfillment of these provisions, the lessees have constructed and are presently operating a motel upon the demised property.

It was also provided that the lessors should pay the property taxes upon the land, and that the lessees should pay the property taxes upon the building or buildings and upon the personal property located therein, and keep the buildings and furnishings adequately insured.

This controversy focuses upon the provision of the lease which grants unto the lessees an option to renew the lease for an additional term of ten years. It provides as follows:

"The lessees are hereby given the option of renewing this lease for an additional ten (10) year period and the same may be exercised by the giving of written notice to the lessors on or before October 1, 1978, the rent for the additional ten (10) year period shall be agreed upon by the lessors and lessees, but in the event that they fail to agree upon said rent, then the same shall be submitted to three arbitrators, one of whom shall be selected by the lessors, one by the lessees and the third by the two thus selected. The findings of these arbitrators shall be final and binding."

The lessors do not dispute the lessees' right to have the lease renewed for the additional ten-year period. The only question here involved is the method by which the rental for the additional term is to be determined should the option be exercised. The lessees contend that the fair meaning of the quoted portion of the lease is that the renewal rental is to be based upon the value of the land alone. The lessors take the position that when considered in its entirety, the lease requires that said rental be based upon the value of the buildings, furnishings, fixtures, appliances, and all other personal property located in or on the premises and used in the operation of the motel situate thereon, in addition to the value of the land.

By agreement of counsel for both sides, the case was submitted upon a stipulation of facts to the trial judge. His

order, from which the lessors have appealed, adopted the view of the lessees and held that the rent should be based on the land value only.

Some courts make a distinction between a provision in a lease for a renewal and a provision in a lease for the extension of the term at the option of the lessee. A renewal is treated as a new and distinct tenancy; a new lease is contemplated. Where an extension is involved, the lessee holds for the additional term under the original lease. A lease with an option to extend is treated, upon the exercise of the option, as a present demise for the full term to which it may be extended. 50 Am. Jur. (2d) Landlord and Tenant § 1156 (1970).

The lease before us uses the word "renew" several times, but it also refers to "any extension or renewal" two times. We cannot say that the parties intended a renewal as contrasted with an extension.

"Even in jurisdictions in which a distinction obtains, it has been judicially recognized that considerable difficulty sometimes arises in deciding whether in different leases a provision is one for a renewal or an extension. In the final analysis, whether a contractual provision involves a renewal or an extension is determined by the intention of the parties as disclosed by the whole instrument and the parties' interpretation and practical construction thereof; and the use of the word 'renewal' or 'extension' is not conclusive." 51C C. J. S. Landlord & Tenant § 54 (1968).

To the same effect is the case of *Mutual Paper Co. v. Hoague-Sprague Corp.*, 297 Mass. 294, 8 N. E. (2d) 802 (1937), wherein the court stated:

"The use of the word 'renewal' alone in a lease provision is not enough to prevent such a provision from being construed as an extension, where the latter result is shown by the circumstances to have been intended by the parties."

Neither party herein contends that a new lease is contemplated. According to the terms of the lease the option

"may be exercised by the giving of written notice to the lessors on or before October 1, 1978, . . . ." The only change anticipated is a new rental to be agreed upon or arbitrated. We regard the disputed provision quoted hereinabove as granting the lessees an option to extend the lease for ten years upon the same terms and stipulations, as opposed to providing for a new lease contract.

In *Murray v. Odman*, 1 Wash. (2d) 481, 96 P. (2d) 489 (1939), upon facts almost identical to those before us, the court held that during the extension period land rent only was contemplated by the terms of the lease therein, reasoning in part as follows:

"Inasmuch as the [lessees] herein have exercised their option, the covenant for extension operated as a present demise of the land for the full term of seven years. From this it follows that the construction of the building formed part of the consideration, not merely for the original five-year period, but for the entire term as extended. While this conclusion would not of itself necessarily determine the basis upon which the amount of the rental during the extension period was to be fixed, it lends support to the inference that the payment of ground rent only was to continue, but on the basis of its reasonable value at that time."

To support their contention that the rent for the extended term should be based upon the value of the land and improvements, the lessors primarily rely upon the final paragraph of the lease, which provides as follows:

"At the end of the lease period, or if said lease is sooner terminated, the buildings, improvements, furnishings and fixtures shall forthwith become the property of the lessors, their heirs and assigns."

They argue that the lease period referred to therein is the original twenty-year period, upon the expiration of which the lessees will have no further interest in the improvements even if they avail themselves of their option. In concluding otherwise, their argument continues, the trial

judge failed to give meaning and significance to the following provisions:

"In the event that the premises shall be destroyed by fire or other cause, this lease may be terminated by the lessees at their option and the proceeds from such insurance policy or policies as may be in effect at that time shall be applied to the payment of such mortgage indebtedness existing and the balance thereof shall be prorated as follows: if the premises are destroyed by fire during the first ten (10) years of this lease period, then the balance of the proceeds shall become the property of the lessees. Beginning with the eleventh year, the balance of the proceeds shall be prorated ten per cent for each year, that is to say, that if the premises are destroyed during the eleventh year, the lessors will receive ten per cent and the lessees ninety per cent. The twelfth year the lessors will receive twenty per cent and the lessees will receive eighty per cent, etc. . . ."

We disagree. Obviously, the lessors have an insurable interest in the buildings, furnishings, etc. At most we think that the insurance provision recognizes the fact that the older the lease, the less interest the lessees have in the improvements, and, correspondingly, the more interest the lessors have in the improvements. It is an effort to adjust the equities in case of a fire in proportion to the true loss each may experience.

Since we treat the lease as providing for an extension, it follows that the buildings, furnishings, etc., shall become the property of the lessors at the end of the 20 year period if the option is not exercised, but at the end of the 30 year period if the option is exercised.

"That the lessees, their successors and assigns had a *continuous interest* in the improvements, when constructed, is made manifest by the lease itself, for it was *only upon the expiration of the lease* that the buildings and improvements were to become the sole and exclusive property of the lessor, free and clear of any right, title, interest or equities of the

lessees, their successors or transferees. Moreover, the lessees were, and will be, required to pay the taxes on the improvement during the entire term. . . . These considerations, though not decisive of the present question, furnish added support for the conclusion that the amount of rent to be paid during the extension period was to be determined on the basis of ground rent." *Murray v. Odman, supra* (emphasis added).

We are compelled to the conclusion that the trial judge correctly found that the value of the land only is to be considered in determining the rental for the extended term in the event the lessees exercise their option.

Affirmed.

Moss, C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

BRAILSFORD, Justice (dissenting):

Finding no ambiguity in the relevant provision of the lease, I respectfully dissent. Fee simple title to the leased premises, land and buildings, is in the lessors, subject only to the leasehold rights of the lessees. The right asserted is the lessees' option to continue occupancy under the lease for an additional period of ten years at a rental to be agreed upon or arbitrated. The rental is the consideration required of the lessees for continued occupancy of the lessors' land and buildings. To say that the rent shall be arbitrated only with respect to that part of the leased premises which existed at the inception of the original term, is to write an important provision into the lease which the parties omitted entirely. Absent a contrary expression, the rent to be fixed must be related to the premises to be occupied, and that, indisputably, includes the lessors' land and improvements. However, the lessors' claim to rent for personal property of the lessees used in the operation of the motel is ill-founded. Title to such property will remain in the lessees during an extension of the term.

BUSSEY, J., concurs.