CUDAHY, Circuit Judge.
 

 The lessee of real property formerly owned by a railroad in liquidation appeals from the refusal of a reorganization court, sitting in equity, to alter the rent demanded by the railroad’s trustee. We reverse and remand.
 

 For more than 100 years appellants, Farmers Cooperative Elevator (“Farmers”), leased property in Rake, Iowa, that was owned by the Chicago, Rock Island and Pacific Railroad Company (the “Rock Island”). With the approval of the Rock Island, Farmers built a grain elevator on the property and shipped grain by way of the railroad line. The cost to Farmers to build the elevator and to install equipment now at the site was 2.5 million dollars. In March 1975, the Rock Island filed a petition for reorganization in the Northern District of Illinois, under Section 77 of the Bankruptcy Act (formerly codified at 11 U.S.C. § 205 (1970)). On January 25, 1980, after rejecting the Trustee’s plan of reorganization, the court ordered the Trustee to cease all operations as a rail carrier and to liquidate the assets of the estate, including the grain elevator in Rake, Iowa.
 

 Farmers’ rental of the elevator property, since June 1978, had been under a lease with a perpetual term and a base rent of $100 per month.
 
 [1]
 
 Either party could terminate the lease at will upon 30 days’ notice. On October 19, 1982, after Farmers declined to purchase the property at the Trustee’s asking price, the Trustee sent notice terminating the lease effective November 30, 1982, and setting a new rental rate of $6,000 per month. Farmers refused to pay the increased rent. The Trus
 
 *58
 
 tee then advertised the Rake, Iowa, property for sale. Farmers entered the sole sealed bid, in the amount of $305,000, which the Trustee accepted on December 13, 1982. However, Farmers and the Trustee reached an impasse, in their subsequent discussions, over the validity of the Trustee’s unilateral action in raising the rent by 5900%. The two parties agreed to allow the reorganization judge to determine the proper rent for the period between termination of the lease and Farmers’ purchase of the property. On January 19, 1983, the judge approved the sale of the Rake, Iowa, property but deferred ruling on the validity of the interim rental rate. At a hearing on the issue on May 4,1983, the judge ruled in favor of the Trustee. The judge stated: “[T]he improvement is owned by the Trustee, and it doesn’t matter who placed it there. The land as improved is what the Trustee had to lease to [Farmers] and it is on the basis of the improved value that the rental can and may be set. Six thousand dollars seems high, but on the basis of the value of the property as improved it is not such as to trigger the intervention of an equity court.”
 
 [2]
 
 Farmers, which has remained in continuous possession of the property since termination of the lease, now appeals the judge’s decision approving the increased rent.
 
 [3]
 

 Farmers simply argues that it is unfair to force it to pay rent based on a value that includes improvements that it provided.
 
 [4]
 
 In the district court, Farmers presented an affidavit indicating that the total value of the property in an unimproved state is $10,-000; this is an amount approximately equal to the hold-over
 
 rent
 
 that the Trustee seeks. The Trustee admits that a rental increase from $100 to $6,000 is substantial, but contends that the new rate represents the fair rental value of a grain elevator. In his brief, the Trustee argues that “[t]he Trustee’s methodology of upgrading the leases had produced the desired result for all parties in interest. The Trustee was able to market the properties for fair values and to break the ‘log jam’ of parties willing to negotiate seriously.”
 

 Under choice-of-law principles applicable in railroad reorganization, we look to the law of the state in which the real property is located to determine the applicable principles of property law.
 
 See In re Chicago, Milwaukee, St. Paul & Pacific Railroad,
 
 654 F.2d 1218, 1221-23 (7th Cir.1981);
 
 In re Boston & Maine Corp.,
 
 596 F.2d 2, 7-8 (1st Cir.1979). The property of concern in this case is located in Rake, Iowa, therefore Iowa law provides the framework for our analysis.
 

 The traditional principle that, upon annexation to the leasehold, permanent improvements become the property of the landlord does not generally apply in the face of contrary lease provisions.
 
 See discussion
 
 3 J. Grimes,
 
 Commentaries on the Modern Law of Real Property by George
 
 
 *59
 

 Thompson
 
 § 1141 (1980).
 
 [5]
 
 The lease in the instant case stated that Farmers would have ten days after termination to remove all of its real and personal property, including buildings, before such property would be forfeited to the landlord.
 
 [6]
 
 Under Iowa law, if the lease specifically authorizes a tenant to construct and remove improvements, the tenant retains title even to seemingly permanent improvements. For example, in
 
 Leslie Pontiac v. Novak,
 
 202 N.W.2d 114, 117 (Iowa 1972), the lease provided that at termination the tenant could remove any “fixture affixed to the realty as real property” so long as the premises were restored to their original condition. At a cost of $6,000, the tenant constructed a steel building on a concrete base. The landlord brought an action, at the end of the lease term, to enjoin the tenant from taking the building. The Iowa Supreme Court held that the lease provision controlled, and that the tenant had a right to remove the building from the property. Other jurisdictions give similar controlling weight to such lease provisions.
 
 See e.g., Sutton v. Frost,
 
 432 A.2d 1311, 1313 (Me.1981);
 
 Fenlon v. Jaffee,
 
 553 S.W.2d 422, 429 (Tex.Civ.App.1977). As we have noted, the lease in this case provided that Farmers could remove any of its “real, personal, or mixed” property, within ten days after termination of the lease. Thus, Farmers had title to the building throughout the lease term.
 
 Cf. Wycoff v. Gavriloff Motors, Inc.,
 
 362 Mich. 582, 588, 107 N.W.2d 820, 824 (1961) (stating that where there is an agreement that buildings installed by the tenant can be removed at the end of a lease term, they can be removed during the lease term as well). The Trustee has conceded that Farmers owned all of the improvements while the lease was in effect.
 

 As we have indicated, this appeal concerns the proper rental rate during the holdover period from November 30, 1982 to January 19, 1983. Because Farmers did not remove the elevator from the leasehold within ten days after the lease was terminated, the Trustee argues that the elevator became his property and he should be free to charge rent as if he had owned the improvements during the entire holdover period. We cannot agree. The Trustee does not dispute that he accepted Farmers’ continued possession of the property until the sale was complete despite Farmers’ failure to pay the holdover rent demanded by the Trustee. Under Iowa law, a tenant in possession of property with the assent of the landlord is presumed to be a tenant at will until proven otherwise. Iowa Code Ann. § 562.4 (West Supp.1984).
 
 See Warren v. Yocum,
 
 223 N.W.2d 258, 262 (Iowa 1974) (executory contract allowing vendee to take possession);
 
 Potter v. Henry Field Seed Co.,
 
 239 Iowa 920, 924, 930-31, 32 N.W.2d 385, 388, 391 (1948) (occupancy after expiration of written lease). Further, the terms of a holdover tenancy, after the
 
 *60
 
 expiration of a written lease, are rebutt-ably presumed to be the same as under the lease.
 
 Friedman v. Weeks,
 
 190 Iowa 1083, 1087, 181 N.W. 390, 391 (1921). Unless the facts demonstrate otherwise, only those provisions that the parties explicitly agree to modify are affected.
 
 Id.
 
 In the instant case, the proper rental is the only condition of Farmers’ tenancy that arguably changed during the holdover period, and that is the very issue that the parties agreed to submit to the bankruptcy court. On the other hand, the lease term allowing Farmers to remove its improvements remained in effect during the entire holdover period.
 
 See Marty v. Champlin Refining Co.,
 
 240 Iowa 325, 333, 36 N.W.2d 360, 364 (1949) (tenant’s right to remove property, granted in an earlier lease that has expired, continues although an agreement to extend tenancy is silent on the point).
 
 [7]
 
 We conclude that Farmers retained title to the improvements during the holdover period and that the rental should be set on that basis.
 

 
 *59
 
 In case the lessee, within ten (10) days from the expiration of this agreement, either by lapse of time, by abandonment or by notice of termination; as provided for herein, shall fail to remove from the premises herein leased any and all property, real, personal or mixed, owned or controlled by lessee, lessee hereby agrees that lessor, at its sole option, may use, dispose of, wreck, sell, lease, remove, or otherwise deal with said property entirely as lessor wishes, free and clear of all liens, encumbrances or claim of ownership of lessee or others. Or lessor, at its sole option, may require lessee to remove all or any part of said property, including but not limited to buildings, foundations, fixtures or personalty.
 

 
 *60
 
 The parties have not cited, and our research has not uncovered, any bankruptcy cases that discuss whether rental paid to a trustee should be based, when the tenant owns the improvements, on the improved or the unimproved value of the property. However, in various contexts in which tenants own or have constructed improvements, other courts, when called upon to determine the proper rent, have chosen the unimproved value.
 
 See Myers v. Cornelius,
 
 262 S.C. 417, 421-23, 205 S.E.2d 180, 182 (1974) (declaratory judgment action to determine rental value under an option to extend the lease);
 
 Murray v. Odman,
 
 1 Wash.2d 481, 487, 96 P.2d 489, 491 (1939).
 
 Accord: Giovinazzi v. Chandler,
 
 418 F.2d 916, 917 (3d Cir.1969) (the measure of landlord’s damages against the lessee, during the term of the lease, should not include the value of tenant’s improvements). In a similar vein, after a sale of realty has been set aside, the rent assessed against a vendee surrendering possession is generally based on a value that excludes improvements constructed by the vendee.
 
 See Tompkins v. Sandeen,
 
 243 Minn. 256, 262-63, 67 N.W.2d 405, 410 (1954) (rental as a setoff of recovery from defaulting vendor); Annot. 49 A.L.R.2d 1169, 1181.
 
 Cf. Calbreath v. Borchert,
 
 248 Iowa 491, 497, 81 N.W.2d 433, 437 (Iowa 1957) (stating that there should be an accounting for vendee’s improvements);
 
 Cherry v. Crispin,
 
 346 Mass. 89, 93, 190 N.E.2d 93, 95-96 (1963). Likewise, under Iowa law, one who has placed buildings or farm fixtures on what is later determined to be the land of another is generally charged only the rental value of the land without the structures.
 
 See Wolcott v. Townsend,
 
 49 Iowa 456, 458 (1878) (setoff);
 
 Dungan v. Von Puhl,
 
 8 Iowa 263, 271 (1859); Iowa Code Ann. § 646.20 (West 1950) (authorizing a setoff for improvements in damage actions for wrongful possession of real property).
 
 See generally
 
 Annot., 24 A.L.R.2d 11, 52-55 (1952). Accordingly, we hold that the unimproved value of the Rake, Iowa, property provides the better basis for an equity court to determine the fair rent as between Farmers and the Trustee.
 

 A district judge sitting in a railroad reorganization proceeding is entitled to exercise a great deal of discretion and ordinarily will not be upset on review.
 
 New Haven Inclusion Cases,
 
 399 U.S. 392, 435, 90 S.Ct. 2054, 2080, 26 L.Ed.2d 691 (1970). However, in deciding that the rental rate of $6,000 per month was fair, the reorganization judge stated that the Rock Island Railroad owned the elevator. We disagree with this legal conclusion, which undoubtedly was central to the judge’s determination of the equities of this case. Therefore, we reverse the order of the district court approving the interim rental rate and remand for reconsideration, in light of this opinion, of the proper rent to be
 
 *61
 
 charged to Farmers during the period from November 30, 1982 to January 16, 1983. Circuit Rule 18 shall not apply.
 

 REVERSED AND REMANDED
 

 [1]
 

 . Under the lease, the amount of rent was to be adjusted annually in accordance with changes in the Bureau of Labor Statistics' Consumer Price Index.
 

 [2]
 

 . The judge ruled, however, that the new rental rate should be applied only to the holdover period from the termination of the old lease, on November 30, until January 19, the date the court approved the sale; and not to the Trustee’s suggested date, February 2, when the deed was delivered. The Trustee does not cross appeal with respect to this ruling.
 

 [3]
 

 . We have jurisdiction to hear this appeal under 28 U.S.C. § 1291. The reorganization court declined to change the rental rate as part of the proceedings to approve the sale of the railroad’s Rake, Iowa property. An order approving the sale of property by a railroad in reorganization is a final appealable order.
 
 See In re Penn Central Transportation Co.,
 
 494 F.2d 270, 273-75 (3d Cir.),
 
 cert. denied,
 
 419 U.S. 883, 95 S.Ct. 147, 42 L.Ed.2d 122 (1974); Section 77(o) of the old Bankruptcy Act (formerly codified at 11 U.S.C. § 205(o) (1970)). The former Bankruptcy Act applies to this appeal, with certain exceptions not relevant here, because the petition for reorganization was filed on March 17, 1975.
 
 See
 
 Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 403(a), (b), 92 Stat. 2549, 2683 (1978),
 
 reprinted in
 
 note preceeding 11 U.S.C.A. § 101 (West 1979). Neither party challenges the sales price of the property.
 

 [4]
 

 .This is an appeal from the reorganization judge’s decision not to exercise his equitable discretion. The equitable power of a court sitting in bankruptcy is well established.
 
 See
 
 28 U.S.C. § 1481.
 
 See generally
 
 1
 
 Collier on Bankruptcy
 
 ¶ 2.09 (14th ed. 1976); 1
 
 Collier on Bankruptcy
 
 ¶ 3.01 [ii] (15th ed. 1984).
 

 [5]
 

 . In addition, had there been no lease at all, the modern view would tend to give tenants rights in the improvements. Tenants in some states have the right to remove improvements that formerly would have been regarded as merged with the realty and thus as property of the landlord.
 
 See In re Concrete Structures, Inc.,
 
 9 B.R. 72, 74-75 (E.D.Va.1981);
 
 Wetjen v. Williamson,
 
 196 So.2d 461, 463-64 (Fla.Dist.Ct.App.1967) (prestressed concrete stadium seats were not shown to have been intended by tenant to be permanent annexation to realty). The Restatement (Second) of Property, Landlord & Tenant § 12.2(4) (1977) provides, in part, "Except to the extent the parties to a lease validly agree otherwise, the tenant is entitled to remove permissible annexations he has made to the leased property ... if the leased property can be and is restored to its former condition after the removal."
 

 [6]
 

 . The lease provided:
 

 [7]
 

 . The lease in the instant case was a form lease provided by the Trustee three years after the Rock Island filed for reorganization. The termination was under the authority of the lease and not the bankruptcy statute.
 
 Compare In re Schnabel,
 
 612 F.2d 315, 317 (7th Cir.1980) (all terms originally agreed to by the bankrupt landlord were voided by the trustee’s failure to formally assume the lease).