GEORGE FERGUSON, Appellee, v. ILLINOIS CENTRAL RAILROAD
COMPANY, Appellant.

**EMINENT DOMAIN:** Public Use—Railway Right of Way for Private
   **Business Site.** The board of railroad commissioners has no consti-
   tutional power to order a railway company to furnish a private party
   with a site on its right of way, and to fix the rental for such site, in
   order to enable such party to erect and maintain on such site a coal
   shed in which he may store his coal and from which he may sell his
   coal for private gain, Sec. 8169, Code of 1924, to the contrary not-
   withstanding.

Headnote 1:  20 C. J. p. 556.

Headnote 1:  22 L. R. A. (N. S.) 35; 10 R. C. L. 24.

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD,
                Judge.

OCTOBER 26, 1926.

Appeal from a decree confirming an order by the board of
railroad commissioners regarding the rental of a site for a coal
shed.  The facts appear in the opinion.—*Reversed.*

   *E. C. Craig, Helsell & Helsell,* and *Henderson, Fribourg,
Hatfield & Fribourg,* for appellant.

   *F. L. Ferris, J. H. Henderson, Stephen Robinson,* and *John
H. Mohr,* for appellee.

   FAVILLE, J.—This case is submitted upon a stipulation of
facts.  The town of James is a small village eight miles north of
Sioux City.  Six families comprise the population of the village.
The appellant's railroad passes through the village.  It appears
that at one time the appellee had leased from the appellant a lot
on its right of way, adjacent to a sidetrack in said town, upon
which is located a coal shed 14x72 feet in dimensions.  The ap-
pellant and appellee were unable to agree upon the rental of said
lot, and an application was made by appellee to the board of rail-
road commissioners to fix the same.  After a hearing, the said

board entered an order fixing the annual rental which should be paid by appellee for said site, to be used for said purpose. The appellant herein appealed from said order to the district court, where the order of the board of railroad commissioners was by decree approved and confirmed. From such decree this appeal is prosecuted.

Section 8169, Code of 1924, is as follows:

"When a disagreement arises between a railroad company and the owner of any building used for receiving, storing, or manufacturing any article of commerce transported or to be transported, situated on the railroad right of way or any land owned or controlled by the railroad company for railroad purposes, as to the terms and conditions on which the same is to be continued thereon or removed therefrom, or when application is made by any person, firm, or corporation for a site on such lands for the erection and maintenance of such improvements, and the railway company and the applicant cannot agree as to whether such improvement shall be placed on such lands, or as to the character and location of the buildings to be erected and maintained thereon, or as to the terms and conditions under which the same may be placed or operated, such railway company, person, firm, or corporation may make written application to the board of railroad commissioners and such board shall, as speedily as possible after the filing of such application, hear and determine such controversy and make such order in relation thereto as shall be just and equitable between the parties, which order shall be enforced in the same manner as other orders of the board."

The order of the board of railroad commissioners was made in pursuance of the provisions of said statute.

But one question is presented for determination upon this appeal, and that is whether or not the order of the board of railroad commissioners was an invasion of the constitutional rights of the appellant. Section 18, Article I, of the Constitution of Iowa, provides that:

"Private property shall not be taken for public use without just compensation first being made, or secured to be made, to the owner thereof as soon as the damages shall be assessed by a jury, who shall not take into consideration any advantages that may result to said owner on account of the improvement for which it is taken."

If the effect of the order of the board of railroad commissioners in the instant case is to deprive the appellant of private property for other than a public use, then such order is violative of the appellant's constitutional rights.

The section of the statute above quoted is very broad and comprehensive in its terms. It vests in the board of railroad commissioners authority to hear and determine a controversy that may arise "between a railroad company and the owner of *any* building used for receiving, storing, or manufacturing any article of commerce transported or to be transported, situated on the railroad right of way or any land owned or controlled by the railroad company for railroad purposes."

It is obvious that, under the provisions of this statute, a controversy might arise between a railroad company and the owner of a building that might be used for receiving, storing, or manufacturing an article of commerce where the owner of such building was using same for a strictly public purpose. It is occasionally the case that a municipality is the owner of a public warehouse that is used for the purpose of receiving or storing articles of commerce, or an individual or corporation may devote its property to a strictly public use. The statute is broad enough by its terms to vest in the board of railroad commissioners the authority to determine the rental value of a site upon a railroad right of way that would be used by a municipality for a public warehouse, or by a party for a wholly public purpose. When viewed in this light, and applied for this purpose, the statute would be upheld, and the act of the board of railroad commissioners would not be an invasion of constitutional rights respecting the taking of property.

With certain restrictions as to regulation of rates and other well recognized matters, a railroad company owns and holds its right of way subject to the same rights that a private citizen owns his property: to wit, that it may be taken, under proper conditions, for a public use. It is true that the business of a railroad company is of such a character that it is properly subject to governmental regulation, but that does not deprive a railroad company of the constitutional protection respecting the taking of its property for the use of another.

In the quite recent case of *Wolff Packing Co. v. Court of Industrial Relations*, 262 U. S. 522 (67 L. Ed. 1103), the Su-

preme Court of the United States, speaking by Mr. Chief Justice Taft, said:

"[There are] businesses which, though not public at their inception, may be fairly said to have risen to be such, and have become subject in consequence to some government regulation. They have come to hold such a peculiar relation to the public that this is superimposed upon them. In the language of the cases, the owner, by devoting his business to the public use, in effect grants the public an interest in that use, and subjects himself to public regulation to the extent of that interest, although the property continues to belong to its private owner and to be entitled to protection accordingly [citing many cases]."

. So the fact that appellant is a railroad company and subject to proper governmental regulation as such, in the public interest, does not place it outside the protection of the Constitutions, both state and Federal, in respect to the appropriation or "taking" of its property for the use of another party for a private purpose. The right to "regulate" does not include the right to "take" for the private use of another.

In its last analysis, therefore, the question for our determination is whether or not the use to which the appellee sought to subject the property of the appellant was, in a proper sense, a "public use," as distinguished from a "private use."

The line of demarcation between a public use and a private use of property is not always an easy one to discern. The question is, however, one for the determination of the courts, and not for legislative definition or declaration. *Arnsperger v. Crawford,* 101 Md. 247 (61 Atl. 413). See, also, *McMillan v. Noyes,* 75 N. H. 258 (72 Atl. 759); *Lux v. Haggin,* 69 Cal. 255 (10 Pac. 674); *Caretta Railway Co. v. Virginia-Pocahontas Coal Co.,* 62 W. Va. 185 (57 S. E. 401).

The words "public use" are not synonymous with "public benefit." The public may receive a substantial benefit from the use of certain property by private individuals, but this does not necessarily constitute a public use of the property. *Wisconsin River Imp. Co. v. Pier,* 137 Wis. 325 (118 N. W. 857).

In *Wolff Packing Co. v. Court of Industrial Relations,* supra, it is well said:

"It is very difficult under the cases to lay down a working rule by which readily to determine when a business has become

'clothed with a public interest.' All business is subject to some kinds of public regulation; but when the public becomes so peculiarly dependent upon a particular business that one engaging therein subjects himself to a more intimate public regulation is only to be determined by the process of exclusion, and inclusion, and to gradual establishment of a line of distinction.''

And, also:

''It has never been supposed, since the adoption of the Constitution, that the business of the butcher, or the baker, the tailor, the wood chopper, the mining operator, or the miner was clothed with such a public interest that the price of his product or his wages could be fixed by state regulation. It is true that in the days of the early common law an omnipotent Parliament did regulate prices and wages as it chose, and occasionally a colonial legislature sought to exercise the same power; but nowadays one does not devote one's property or business to the public use or clothe it with a public interest merely because one makes commodities for, and sells to, the public in the common callings of which those above mentioned are instances.''

The term ''public use,'' as employed in the constitutional provision, does not mean a use which may properly be deemed a public benefit or advantage, but it means that the public possesses, to some extent, certain rights to the use or employment of the property. *Borden v. Trespalacios Rice & Irrigation Co.* (Tex. Civ. App.), 82 S. W. 461, 465; *Brown v. Gerald,* 100 Me. 351 (61 Atl. 785); *Hench v. Pritt,* 62 W. Va. 270 (57 S. E. 808).

It is unnecessary that we enter upon an extensive review of the numerous decisions construing the term ''public use.'' A few citations will serve to illustrate what has been recognized as proper ''public use'' of property. Our public drainage statutes have been sustained on this ground. *Sisson v. Board of Supervisors of Buena Vista County,* 128 Iowa 442. The taking of land for a public highway or street, or for a public park, or for water supply, or for the construction of a sewer system, or for the distribution of electricity, or for mills, or for common carriers, indicates the general class that is universally recognized as constituting a ''public use,'' within the constitutional provisions. As before said, a situation might arise under the statute where the owner of a building which was used for receiving, storing, or manufacturing an article of commerce transported or

to be transported would be engaged in said business in such a manner that the use was, as a matter of fact, a public use. The leading case in this country recognizing that there may be such a public use of privately owned property is the case of *Munn v. Illinois,* 94 U. S. 113 (24 L. Ed. 77), where the warehouses in the city of Chicago were involved.

In *Bankhead v. Brown,* 25 Iowa 540, we had under consideration the establishment of a private road under an act of the legislature, and we held that the act permitting the establishment of private roads and the taking of property therefor was in violation of the constitutional provision.

The same rule was recognized in *Richards v. Wolf,* 82 Iowa 358. In *Sisson v. Board of Supervisors,* supra, we said:

"It must be confessed that there is no standard by which to determine in all cases what is a public use, or what can fairly be regarded as a public benefit, and therefore conducive to the public health, welfare, etc. The Constitution contains no words of definition, and it seems to remain for each act which is brought forward, aided, of course, by the disclosed purpose and object thereof, and by the conditions, stated or well known, upon which it is to operate, to furnish an answer to the test."

In *Missouri Pacific R. Co. v. Nebraska,* 164 U. S. 403 (41 L. Ed. 489), the Supreme Court of the United States had under consideration an order by the Nebraska state board of transportation, directing a railroad company to grant to a certain person the right of erecting an elevator on the land of the railway company. The court said:

"To require the railroad company to grant to the petitioners a location on its right of way, for the erection of an elevator for the specified purpose of storing from time to time the grain of the petitioners and of neighboring farmers, is to compel the railroad company, against its will, to transfer an estate in part of the land which it owns and holds, under its charter, as its private property and for a public use, to an association of private individuals for the purpose of erecting and maintaining a building thereon for storing grain for their own benefit, without reserving any control of the use of such land, or of the building to be erected thereon, to the railroad company for the accommodation of its own business, or for the convenience of the public. This court, confining itself to what is necessary for the decision

of the case before it, is unanimously of opinion that the order in question, so far as it required the railroad corporation to surrender a part of its land to the petitioners, for the purpose of building and maintaining their elevator upon it, was, in essence and effect, a taking of private property of the railroad corporation, for the private use of the petitioners."

The appellee calls our attention to a number of cases wherein the courts have held that the erection of grain elevators and warehouses upon the right of way of a railroad is a matter of such general and public interest that the taking of property therefor may be regarded as a public use. *Munn v. Illinois,* supra; *Gurney v. Minneapolis Union Elev. Co.,* 63 Minn. 70 (65 N. W. 136).

Under the particular circumstances of cases of this character, it was properly held that the use was a public use, where grain was received indiscriminately from the public for storage at great terminal centers. But no cases cited by the appellee, nor any that we have been able to discover, go to the extent of holding that the taking of property for the erection of a coal shed, to be used solely by an individual for the purpose of storing his own coal, to be sold to his customers for personal profit, was a "public use" of said property. It may be said that the public is interested in having the appellee, or some other person, sell coal in the village of James. The public is also interested in having some person in the village sell clothing, shoes, flour, and other necessaries of life; but it cannot be said that, because the public is interested in the purchasing of said commodities, the dealer who sells them for his private gain is entitled to take the private property of another citizen upon which to maintain his place of business, on the theory that it is necessary for a "public use."

Under the general and broad terms of the statute, it is possible that the board of railroad commissioners may properly be called upon to act in connection with a case where a use of railway property by another party may be a proper public use. Such a situation is not presented in the instant case.

We hold that the order of the board of railroad commissioners, requiring that the appellant should furnish to the appellee a site for the erection and maintenance of a coal shed, for the sole purpose of storing his own coal therein, to be sold by the appellee

for private gain, and fixing the rental therefor, was a violation of the constitutional rights of the appellant, and, if carried out, would result in taking the private property of the appellant for other than a public use. It therefore follows that the order appealed from was an invasion of appellant's constitutional rights, and hence invalid. The decree of the district court confirming said order must be, and it is,—*Reversed.*

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.