*301 DUMBAULD, Senior District Judge.
The defunct Rock Island railroad still supplies grist for the judicial mill. In the case at bar the question presented is whether the application of Iowa rent control laws to property purchased by a landlord from the bankruptcy trustee liquidating the railroad is precluded by reason of conflict with any federal policy designed to maximize the selling price of a bankrupt’s assets. Finding no conflict between applicable Iowa law and federal policy under the Supremacy Clause (Art. VI, cl. 2 of the U.S. Constitution), we reverse the contrary holding of the District Court.
Appellant, Sanborn Cooperative Grain Company, operated a grain elevator at Melvin, Iowa, on 4.4 acres of land leased from the trustee of the Chicago, Rock Island and Pacific Railroad Company. Valuable improvements on the land had been erected by appellant. After rejecting appellant’s offer of $16,308.58 for the land, the trustee accepted the bid of Robert L. Kent, Jr. of $120,000.00 for the 4.4 acres together with other real estate located at Goodell, Iowa. As stated in Judge McGarr’s opinion in the instant case, “For reasons not known to the court, Kent allocates $100,000 of his purchase price to Melvin and $20,000 to Goodell.” The District Court’s Order No. 621, on November 1, 1983, confirmed the sale of both properties to Kent “free of liens and other claims including ... any claim or right of any person, firm, corporation or governmental authority under House File 2334, Sixty-Ninth General Assembly of Iowa.”
“House File 2334” seems to be a reference to recent Iowa legislation, one of whose provisions (identified as Iowa Code § 327 G. 78), according to the District Court “requires a railroad or its successor to offer its property adjacent to its right-of-way to its lessee who, if not satisfied with the offered price, can apply to” the Iowa Transportation Regulation Authority. “The Authority would make a final determination of the fair market value of the property and that determination would be binding on the parties.”
The District Court held by its opinion of July 11, 1983, that § 327 G. 78 was “preempted by the federal bankruptcy laws under which this reorganization court has operated in this matter.” Thereafter the sale was confirmed, as stated above, on November 1, 1983, free and clear of any claim under § 327 G. 78.
No appeal was taken from the District Court’s decisions of July 11, 1983 and November 1, 1983, and their correctness is not in question before us.[1] The present appeal is from the order of August 21,1984, which deals with a different Iowa statutory provision (§ 327 G. 62, also contained in “House File 2334”). This provision empowers the Transportation Regulation Authority to “fix the terms and conditions of rental between a railroad or its grantee and the lessee of property adjacent to a railroad right-of-way.”
As the District Court recognized, there are “significant differences” between the proceeding involving § 327 G. 78 decided on July 11, 1983, and the instant case seeking to nullify action of the Iowa Authority under § 327 G. 62: “the previous case involved the proposed sale by the Trustee allegedly in contravention of section 327 G. 78. The instant case does not directly involve the Trustee; rather, it involves, in its purest sense, a private rental dispute between a property owner and his tenant.” [Italics those of the District Court], In that dispute, as the District Court also points out, a ruling has already been made by the Iowa Authority, which the landlord seeks to set aside, with reference to “land once owned by the Trustee.”
*302 Thus the crux of the case at bar is whether the fact that the land involved was formerly held by the Trustee and sold by him to the present landlord should suffice to preclude operation of Iowa’s rent-control law. We are not satisfied that a sufficient showing has been made to sustain such a result.
The propriety of State regulation of grain elevators as a business “affected with a public interest” has been settled law ever since Munn v. Illinois, 4 Otto 113, 125-32, 94 U.S. 113, 125-32, 24 L.Ed. 77 (1876). Familiar also are the rent control laws customary in war time, and continuing to this day in New York City and perhaps elsewhere in places suffering a shortage of rental housing. Bowles v. Willingham, 321 U.S. 503, 517-18, 64 S.Ct. 641, 648-49, 88 L.Ed. 892 (1944). As there said by the Supreme Court “Of course, price control, the same as other forms of regulation, may reduce the value of the property regulated. But ... that does not mean that the regulation is unconstitutional.” Similarly, the fact that prospective bidders might offer more if they could use the land bought from a bankrupt railroad’s trustee for a barroom or brothel rather than for a grain elevator does not establish an overriding federal policy prohibiting traditional forms of State regulation of rents.
The District Court, after holding the ruling of the Iowa Authority invalid, went on to say that: “Any rental dispute which remains between Kent and Sanborn can properly be adjudicated by this Court.”
With respect to the interim period between the purported cancellation of San-born’s lease by the trustee on November 1, 1982, up until the date of sale by the trustee to Kent, approved by the District Court on November 1, 1983, there would appear to be no reason why the District Court should not fix the rent for that period, in accordance with the agreement of the parties referred to in the District Court’s opinion: “The parties also agreed to ask this Court to fix the rent for the interim period
Such a procedure was approved by our remand for reconsideration of a similar interim rate of rental in a previous Rock Island case, Appeal of Farmers Cooperative Elevator, Rake, Iowa, 753 F.2d 56, 58, 60 (7th Cir.1985). As there held, the rental must be based on unimproved value of the land, when the tenants own or have constructed the improvements (such as a grain elevator). We there noted that under Iowa law, the trustee'could not enjoy the windfall of making himself owner of the improvements, simply because the lessee did not remove them within ten days, when the lessee continued to occupy the property with the trustee’s acquiescence. (753 F.2d at 59). We stated that:
Under choice-of-law principles applicable in railroad reorganization, we look to the law of the state in which the real property is located to determine the applicable principles of property law. See In re Chicago, Milwaukee, St. Paul & Pacific Railroad, 654 F.2d 1218, 1221-23 (7th Cir.1981); In re Boston & Maine Corp., 596 F.2d 2, 7-8 (1st Cir.1979). The property of concern in this case is located in Rake, Iowa, therefore the Iowa law provides the framework for our analysis.
The same rule is applicable in the case at bar. Likewise the Supreme Court in Butner v. U.S., 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), declared that:
Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving “a windfall merely by reason of the happenstance of bankruptcy.” Lewis v. Manufacturers National Bank, 364 U.S. 603, 609 [81 S.Ct. 347, 350, 5 L.Ed.2d 323]. The justifications for application of state law are not limited to ownership interests; they apply with *303 equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.
In accordance with that line of reasoning we are convinced that, within federal constitutional limits, it is for State law and policy to determine what degree of regulation of rents is appropriate to protect the public interest and the economic welfare of a region vitally dependent upon farming and the efficient functioning of grain elevators in order to assure its meaningful participation in the national and world market for agricultural products.
We now consider other arguments advanced in support of the District Court’s ruling. It is contended that the case at bar is a collateral attack on the November 1, 1983, order confirming the sale. There is no merit to this contention. The validity of the sale has not been challenged and is not before us. The sale is consummated and complete. The present controversy is between other parties. It is res inter alios insofar as the Trustee is concerned.[2]
Nor is the instant order really a means of enforcing the order confirming the sale. It is really an order relating to a proceeding under a different statutory provision under Iowa law. At most the District Court’s declaration that it “must” have intended to strike down everything contained in “File 2334” would be obiter dictum and brutum fulmen. It is an elementary maxim of our legal system that a court decides only the case before it, and can not render advisory opinions disposing of other issues not presented for decision.
A good illustration of this principle is found in Champlin Refining Co. v. U.S., 329 U.S. 29, 32, 67 S.Ct. 1, 2, 91 L.Ed. 22 (1946), where the Supreme Court held that a pipeline which was deemed to be a common carrier by virtue of 49 U.S.C. § l(3)(a) could be compelled to supply a valuation report required of such carriers by 49 U.S.C. § 19a. Yet the Court later held in U.S. v. Champlin Refining Co., 341 U.S. 290, 295-96, 303, 71 S.Ct. 715, 718-19, 722, 95 L.Ed. 949 (1951), that the company could not be compelled to file tariffs required of such carriers by 49 U.S.C. § 6.
Other questions discussed by counsel need not be resolved now. Thus whether application of Iowa law results in confiscation or deprivation of property without due process of law or taking for a non-public use are issues not ripe for decision here or necessary to disposition of the case at bar. Iowa courts provide judicial review of decisions of the Transportation Regulation Authority, and presumably will apply whatever federal criteria and standards of constitutionality are currently applicable to issues of confiscation or regulation or taking for public use, subject to appropriate subsequent federal review.
For the foregoing reasons the decision of the District Court is
Reversed.

. It seems fairly obvious, however, that to require a Trustee charged with sale of a bankrupt’s property for the benefit of creditors to delay disposition of the assets until a State agency fixes their value (a value binding on all parties, including presumably the Trustee, and constituting the ceiling for his sale) would surely constitute a more substantial interference with the Trustee’s federal function of liquidating the bankrupt estate than would result from the application of Iowa’s rent control laws to landlord-tenant disputes regarding property no longer part of the bankrupt estate.

. Of course we intimate no opinion as to what remedies, if any, Kent may have (such as rescission of the sale) if he can prove that the Trustee told him orally to forget all about Iowa laws.