CMC REAL ESTATE CORPORATION,
Appellant,

v.

IOWA DEPARTMENT OF TRANSPOR-
TATION, RAIL AND WATER DIVI-
SION; and Iowa Department of Inspec-
tions and Appeals, Appeals and Fair
Hearings Division, Appellees,

Dickens Cooperative Elevator Company,
Intervenor–Appellee.

No. 90–802.

Supreme Court of Iowa.

Sept. 18, 1991.

Bennett A. Webster and James L. Pray of Gamble, Riepe, Webster, Davis & Green, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Merrell M. Peters, Acting Gen. Counsel, and David Ferree and Mark Hunacek, Asst. Attys. Gen., for appellees.

Harold W. White of the Fitzgibbons Brothers Law Office, Estherville, for intervenor-appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Petitioner CMC Real Estate Corporation (CMC), a successor in interest to the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (Milwaukee Railroad), filed this judicial review action challenging the respondent Iowa Department of Transportation's (DOT) fixing of lease terms on property owned by CMC and occupied by intervenor Dickens Cooperative Elevator Company (Coop). The district court reviewed the DOT's decision and upheld the terms of the lease agreement ordered by the DOT. We agree and affirm.

I. *Background facts and proceedings.* Coop has, since 1938, leased land located in Dickens, Iowa, from the Milwaukee Railroad or CMC, its successor in interest. Coop built grain storage facilities, including several permanent structures, on the leased land, which is located adjacent to the railroad tracks. Coop uses its convenient access to railway transportation to receive farming supplies, including fertilizer, and to transport corn and soybeans from the grain storage facility to purchasers.

In 1976, the Milwaukee Railroad and Coop entered into a five-year lease of the property located in Dickens at an annual rental rate of $1,300. In 1981, after the Milwaukee Railroad had entered into bankruptcy, the trustee of the Milwaukee Railroad agreed to a five-year extension of the lease with Coop at an annual rental rate of $1,450. On November 25, 1985, CMC became the successor in interest to the Milwaukee Railroad.

The 1981 extension of the 1976 lease expired in 1986. CMC sought to re-lease the property to Coop for 3 years at an annual rate of $11,200. Coop, dissatisfied with CMC's proposed lease rate, filed an application with the DOT pursuant to Iowa Code section 327G.62 (1985), seeking an order fixing just and equitable lease terms on the property leased to it by CMC.

DOT transferred the matter to the department of inspections and appeals for a contested case administrative hearing before a hearing officer. *See* Iowa Code § 327G.62 (1987); 761 Iowa Admin.Code 13.20. After conducting an evidentiary hearing, the hearing officer ordered the parties to execute a five-year extension to the parties' current lease with three modifications. Those modifications were an adjustment of the annual rental rate to $4,993.65, a yearly adjustment of the rent as reflected by the consumer price index, and elimination of all unilateral termination provisions. Both parties to the lease appealed to the DOT. *See* Iowa Code § 10A.202(1)(d); Iowa Code § 17A.15(5).

The DOT, after reviewing the administrative file and the transcript of the administrative hearing, affirmed all terms of the hearing officer's decision, except that it reduced the annual rent to $3,121.

CMC then filed a petition for judicial review in district court. *See* Iowa Code § 17A.19. The district court affirmed the DOT's final order.

CMC appealed. *See* Iowa Code § 17A.20. We now consider CMC's challenges attacking the constitutionality of section 327G.62 and the propriety of the DOT's decision fixing the lease terms.

II. *CMC's "taking" argument.* CMC contends that section 327G.62 violates both United States and Iowa constitutional requirements that private property shall not be taken for public use without just compensation. U.S. Const. amend. V; Iowa Const. art. I, § 18. Relying on *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), CMC also argues that the DOT's actions constituted a taking because the

DOT's fixing of the lease terms took away CMC's property rights in the land leased to Coop, including its right to possess, use and dispose of its property. *See id.* at 435, 102 S.Ct. at 3176, 73 L.Ed.2d at 882. CMC asserts that Coop's occupation of its property is factually similar to the situation found in *Loretto* and, thus, we should hold that a taking occurred.

In fixing the lease terms between CMC and Coop, the DOT relied on section 327G.62, which provides:

> When a disagreement arises between a railroad corporation, its grantee, or its successor in interest, and the owner, lessee, or licensee of a building or other improvement, including trackage, used for receiving, storing, transporting, or manufacturing an article of commerce transported or to be transported, situated on a present or former railroad right-of-way or any land owned or controlled by the railroad corporation, its grantee, or its successor in interest, as to the terms and conditions on which the article is to be continued or removed, the railway corporation, its grantee, or its successor in interest, or the owner, lessee, or licensee may make written application to the department and the department shall notify the department of inspections and appeals which shall hear and determine the controversy and make an order as is just and equitable between the parties, which order shall be enforced in the same manner as other orders of the department.

For purposes of this appeal we will assume, without deciding, that the DOT's actions in fixing the lease terms in accordance with section 327G.62 constituted a taking.[1] We make this assumption because even if a taking did occur, that taking was for a public use and just compensation was paid. Thus, no constitutional error occurred. *See Easter Lakes Estates, Inc. v. Polk County,* 444 N.W.2d 72, 75 (Iowa 1989) ("takings" doctrine is premised on the notion that private property cannot be taken for public use without paying adequate compensation).

■ A. *The public use issue.* CMC contends that section 327G.62 does not satisfy the constitutional requirement that a person's property may not be taken for the benefit of another without a justifying public purpose even though compensation is paid. *See Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 239, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186, 196 (1984).

■ It is initially for the legislature to determine whether private property is being taken for a public use. *Simpson v. Low–Rent Hous. Agency of Mount Ayr,* 224 N.W.2d 624, 627 (Iowa 1974); *see also Hawaii Hous. Auth.,* 467 U.S. at 239, 104 S.Ct. at 2329, 81 L.Ed.2d at 196. Courts should not substitute their judgment for the legislature's judgment as to what constitutes a public use unless the use is palpably without reasonable foundation. *Id.* at 241, 104 S.Ct. at 2329, 81 L.Ed.2d at 197. The Iowa legislature enacted section 327G.62 to promote the valid public purpose of protecting businesses located on property owned by railroads, or their successors in interest, from the unequal bargaining position that results when such companies, which invest in permanent physical structures on that land and rely on access to the railroad in operation of their businesses, are forced to submit to later unjust lease terms demanded by railroads or their successors in interest. *See generally In re Chicago, Rock Island & Pac. R.R.,* 794 F.2d 1182 (7th Cir.1986); *In re Chicago, Rock Island & Pac. R.R.,* 772 F.2d 299 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *In re Chicago, Rock Island & Pac. R.R.,* 753 F.2d 56 (7th Cir.1985). Protection of these businesses, the legislature feels, furthers the public interest of maintaining a healthy Iowa economy. *Accord In re Chicago, Rock Island & Pac. R.R.,*

---

1. In support of its argument that there has been a permanent physical taking of its property, CMC asserts, *inter alia,* that it cannot dispose of the property and that it cannot terminate the lease. We note, however, that CMC may effectively terminate this lease and dispose of the property by selling it pursuant to the procedures outlined in Iowa Code sections 327G.78 and 327G.79.

772 F.2d at 302 ("The propriety of State regulation of grain elevators as a business 'affected with a public interest' has been settled law ever since *Munn v. Illinois,* 4 Otto 113, 125–32, 94 U.S. 113, 125–32, 24 L.Ed. 77 (1876)."). We cannot say that this public purpose is without foundation. Therefore, we must conclude that if any taking occurred in this case, pursuant to section 327G.62, that taking was for a public use.

CMC argues that *Missouri Pacific Railway v. Nebraska,* 164 U.S. 403, 17 S.Ct. 130, 41 L.Ed. 489 (1896), compels a contrary conclusion. However, we believe it is distinguishable.

In *Missouri Pacific,* the state board of transportation ordered a railroad company to grant an association of farmers the right to erect and maintain a grain elevator on the land of the railroad company. The Court held that the state's action constituted a taking of private property for private use in violation of due process. *Id.* at 417, 17 S.Ct. at 135, 41 L.Ed. at 495. The Court's determination that the property was not taken for public use rested on the fact that the state lacked a justifying public purpose. *See Hawaii Hous. Auth.,* 467 U.S. at 241, 104 S.Ct. at 2329, 81 L.Ed.2d at 197. The present case is distinguishable because we have identified a public purpose justifying the state's alleged taking: the protection of businesses already located on property owned by railroads, or their successors in interest, from potentially unequal bargaining positions.

Finally, we note that the case before us is distinguishable from *Ferguson v. Illinois Central Railroad,* 202 Iowa 508, 210 N.W. 604 (1926). *Ferguson* held, under the predecessor to section 327G.62, that the board of railroad commissioners could not constitutionally order a railroad company to furnish a private party with a site on its property, and to fix the rental for such site, in order to enable the party to erect on such site a private coal shed from which to sell coal for gain. As in *Missouri Pacific,* this court's determination that the railroad's property was not taken for a public use rested on the fact that there was no justifying public purpose for ordering the erection and maintenance of a private coal shed on the railroad's property.

■ B. *The just compensation issue.* CMC contends that it was not afforded just compensation in return for the alleged taking. In support of its position, CMC argues that it was not compensated for the highest and best use of the property.

■ Under the United States and Iowa constitutions, private property may not be taken for a public use without just compensation. *See Easter Lakes Estates,* 444 N.W.2d at 75 ("takings" doctrine is premised on the notion that private property cannot be taken for public use without paying adequate compensation). In determining what constitutes "just compensation," courts must look to the individual facts of each case. *Des Moines Wet Wash Laundry v. City of Des Moines,* 197 Iowa 1082, 1086, 198 N.W. 486, 488 (1924) (the words "just compensation" have no technical or purely legal significance) (proceeding in eminent domain); *Azul Pacifico, Inc. v. City of Los Angeles,* 740 F.Supp. 772, 777 (C.D.Cal.1990). Courts generally look to the property owner's loss rather than the gain of the entity causing the taking to measure the amount of compensation. *Id.* (citing *Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949)). The owner's loss is usually measured by the extent to which the taking deprived it of an interest in its property. *Id.* (citing *United States v. General Motors Corp.,* 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945)).

Section 327G.62 requires that the DOT order Coop to pay compensation that is just and equitable. The DOT ordered compensation that it concluded was just and equitable. Upon review of the record, we do not believe that the DOT abused its discretion in fixing compensation, nor can we say that CMC was not afforded just compensation. More specifically, the record does not show that the DOT failed to justly compensate CMC in calculating an annual rental based upon the unimproved value of the Dickens, Iowa, property. *Accord In re Chicago, Rock Island & Pac. R.R.,* 753

F.2d at 60 ("[W]e hold that the unimproved value of the ... property provides the better basis for an equity court to determine the fair rent...."); *In re Chicago, Rock Island & Pac. R.R.*, 794 F.2d at 1185. Indeed, for the purposes of this lease, the unimproved value of the Dickens, Iowa, property was the extent of CMC's compensable interest therein. *See Azul Pacifico*, 740 F.Supp. at 777.

In further support of its argument, CMC cites, *inter alia, Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir.1986), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988), which states that rental payments to landlords which assure them of a fair return on their investment may not in fact adequately compensate them for a taking of their property. The DOT in this case based its calculation of annual rent on an average return on investment of 11.25%, a return within a range of returns suggested by the parties. Although *Hall* may have stated that rent that assures a landlord a fair return on investment is not the test of adequate compensation in cases involving a claim of taking by physical invasion, the appellate court conceded, in remanding the matter to the district court, that "[i]t may well be that the rental payments ... adequately compensate [landlords] for the taking of their property. However, this cannot be assumed; it must be proven." *Id.* at 1281. *See also Loretto*, 458 U.S. at 441, 102 S.Ct. at 3179–80, 73 L.Ed.2d at 886 (the issue of the amount of compensation that is due is a matter for the state courts to consider on remand). The DOT in this case was not specifically considering the facts before it as elements in a calculation of "just compensation" as such. Our review of the record, however, leads us to conclude that when the DOT ordered rental terms that it concluded were "just and equitable," those terms also amounted to "just compensation."

Having determined that, if CMC's property was taken, it was taken for public use and just compensation was paid, we believe no constitutional violations occurred as claimed.

■ III. *Equal protection.* CMC next contends section 327G.62 violates the equal protection guarantees of the United States and Iowa constitutions by creating a statutory classification that treats railroad corporations and their successors in interest differently from other property owners. CMC contends the two classes receive disparate treatment in that other property owners are always allowed to set the lease terms for their property, while railroads and their successors in interest are required to have their lease terms determined by the DOT in instances when the railroad or its successor in interest and its lessee cannot agree on lease terms. CMC argues that there is no rational basis for the statute's disparity in treatment.

The United States Constitution provides, in part, that, "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Article I section 6 of the Iowa Constitution places substantially the same limitations upon the state as does the equal protection clause of the United States Constitution. *Ruden v. Parker*, 462 N.W.2d 674, 675 (Iowa 1990).

■ All parties agree that we should apply a rational basis analysis in determining whether section 327G.62 violates equal protection. Under that standard, a statute is constitutional unless the challenged classification is patently arbitrary and bears no rational relationship to a legitimate state purpose. *See Bennett v. City of Redfield*, 446 N.W.2d 467, 474 (Iowa 1989). Statutes are presumed constitutional and the burden rests on the challenger to demonstrate that a statute violates equal protection. *Id.* To sustain that burden, petitioner must negative every reasonable basis which may support the statute. *City of Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977).

Our first task is to determine if section 327G.62 promotes a legitimate state purpose. The state has a legitimate interest in protecting and preserving companies located within its borders from influences beyond their control that threaten their continued economic vitality. Section 327G.62 forwards that legitimate purpose by assur-

ing that businesses which locate their operations on railroad property, invest in permanent physical structures on that land, and rely on access to the railroad in operation of their businesses, are not forced to submit to later unjust lease terms demanded by railroads or their successors in interest due to the parties' unequal bargaining power.

The statute's underlying theme is highlighted by the present case, where removal of the substantial physical improvements placed on the land by Coop is not economically feasible. Coop's inability to relocate its improvements left it without any bargaining power in the negotiation of lease terms and gave CMC unfettered power to attempt to impose unjust lease terms.

Having identified the state's legitimate purpose justifying section 327G.62, we must further determine if the classification of railroads and their successors in interest created by the statute bears a rational relationship to the legitimate state purpose we have identified. We believe that it does because railroads and their successors in interest generally constitute the class of parties controlling access to railway transportation.

We agree with the district court that the classification of railroads and their successors in interest, created by section 327G.62, bears a rational relationship to the legitimate purpose of section 327G.62. Therefore, we conclude that section 327G.62 does not violate the equal protection provisions of the United States and Iowa constitutions.

■ IV. *Impairment of contracts.* CMC contends that section 327G.62 constitutes a law impairing contracts in violation of United States constitutional safeguards. *See* U.S. Const. art. I, § 10. Article I section 10 provides that no state shall pass any law impairing the obligation of contracts.

■ Although the language of the contract clause is facially absolute, its prohibition must be accommodated to the inherent police power of the state to safeguard the vital interests of the people.

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569, 580 (1983). The threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. *Id.* at 411, 103 S.Ct. at 704, 74 L.Ed.2d at 580. The severity of impairment increases the level of scrutiny to which the legislation is subjected. *Id.* However, in determining the extent of impairment, we consider whether the industry the complaining party has entered has been heavily regulated in the past. *Id.*

■ If the state regulation constitutes a substantial impairment on private parties' ability to contract, the state, in justification, must have a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem. *Id.* at 411–12, 103 S.Ct. at 704, 74 L.Ed.2d at 581. Once a legitimate public purpose has been identified, the final inquiry is whether the impairment is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. *Id.* at 412, 103 S.Ct. at 705, 74 L.Ed.2d at 581.

We believe section 327G.62 does not impose a substantial impairment on CMC's ability to contract. We reach this conclusion for three reasons. First, CMC has entered into the heavily regulated railway industry. The fact that the railway industry is heavily regulated lowers the level of impairment of CMC's ability to contract, regardless of the fact that CMC does not presently operate a railroad, because CMC was or should have been aware of the extensive regulation of railways prior to purchasing the railway property that was the subject of Coop's lease. Secondly, section 327G.62's impairment of CMC's ability to contract in this case is not substantial because the statute only operates to prevent CMC from charging an unjust rent. Section 327G.62 does not impair CMC from entering into a lease with Coop containing just and equitable terms.

Finally, section 327G.62 is supported by the legitimate public purpose of assuring

the economic vitality of companies which locate their operations on railroad property, invest in permanent physical structures on that land, and rely on access to the railroad in operation of their businesses.

Section 327G.62 thus imposes a minor impairment on CMC's ability to lease its land, and that impairment is nonetheless an appropriate and reasonable condition justified by a legitimate state purpose. Therefore, we conclude that section 327G.62 does not violate article I section 10 of the United States Constitution.

■■■ V. *Due process.* CMC's final constitutional challenge is that section 327G.62 is unconstitutionally vague and does not provide meaningful standards or guidelines for its application or interpretation. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. 1, § 9.

■■■ A civil statute is unconstitutionally vague under the due process clause when its language does not convey a sufficiently definite warning of proscribed conduct, as measured by common understanding or practice. *Knepper v. Monticello State Bank*, 450 N.W.2d 833, 838 (Iowa 1990). When persons must necessarily guess at the meaning of a statute and its applicability, the statute is unconstitutionally vague. *Id.* However, where economic regulation is involved, statutes are subject to a less strict vagueness test because their subject matter is often more narrow, and because businesses, which face economic demands to plan businesses carefully, can be expected to consult relevant legislation in advance of action. *Id.* Finally, if vagueness can be avoided by a reasonable construction, consistent with the statute's purpose, the statute must be interpreted in that way. *Id.*

We agree with the district court that, as applied in this case, section 327G.62 is not unconstitutionally vague. Section 327G.62 clearly states the manner of operation of the statute and the parties affected thereby in specifying that the DOT is to resolve in a just and equitable manner any disagreements or controversies between a railroad successor and the owner of improvements situated on land owned by the railroad suc-

cessor. Case law applying section 327G.62 has also outlined general aims of the statute, and has otherwise stated the general rule of equity that the unimproved value of property in the present situation should provide the basis for a fair rental determination between a landlord and its tenant. *See generally In re Chicago, Rock Island & Pac. R.R.*, 772 F.2d 299 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *In re Chicago, Rock Island & Pac. R.R.*, 753 F.2d 56 (7th Cir. 1985).

We hold that the statute complies with constitutional due process requirements.

VI. *Factual findings.* CMC next challenges the DOT's factual findings, contending that substantial evidence does not support the agency's decision. *See* Iowa Code § 17A.19(8)(f). Specifically, CMC contends that substantial evidence does not exist because the DOT erred in relying on the testimony of Coop's expert appraiser, erred in its determination of the highest and best use of the property, erred in determining that the railroad spur did not increase the property's value and erred in not giving greater weight to CMC's expert appraiser's testimony. Thus, CMC says DOT's decision was arbitrary and capricious and in violation of Iowa Code section 17A.19(8)(f).

A recent court of appeals case, *Morgan v. Iowa Dep't of Transp.*, 428 N.W.2d 675, 677–78 (Iowa App.1988), relying on our statements in *Norland v. Iowa Dept. of Job Serv.*, 412 N.W.2d 904 (Iowa 1987), concisely states our scope of review:

> On purely factual matters such as this, both the district court and [appellate courts] exercise a limited scope of review. Fact findings of an agency are binding on the courts when they are supported by substantial evidence. Evidence is not insubstantial merely because it would have supported contrary inferences. It is substantial when a reasonable mind would accept it as adequate to reach the same findings. When there is a conflict in the evidence or when reasonable minds might disagree about the inferences to be drawn from the evidence,

the decision of the agency should be affirmed. In short, the findings of an agency are binding on appeal unless a contrary result is demanded as a matter of law. This limited scope of factual review is warranted by the presumably greater expertise an agency has over matters within its purview. We must ask "not whether the evidence might support a different finding but whether the evidence supports the findings actually made."

(Citations to *Norland* omitted.)

Without unduly extending this opinion by discussion of the factual issues raised, our review of CMC's challenges to the agency's decision discloses that the agency's findings and decision were all supported by substantial evidence in the record. We therefore conclude that the district court did not err in affirming the DOT's decision on these issues.

■ VII. *Scope of DOT's powers.* CMC's final argument is that section 327G.62 did not give the DOT authority to modify the termination provision of the lease or to add other lease terms. More specifically, the lease proposed by CMC provided, *inter alia,* that either party could cancel the lease upon giving thirty days notice to the other party. DOT struck that provision in its decision. Our reading of the statute compels us to uphold the DOT decision. Allowance of a thirty-day cancellation provision to either party could not only make the other lease terms inoperative, but could also lead to the very situations which section 327G.62 was designed to prevent: those in which a railroad successor threatens unilateral termination of the lease in order to force a captive tenant to pay an unjust rent.

Additionally, section 327G.62 grants the DOT authority to hear and determine controversies and make an order as is just and equitable when disagreements arise between a railroad corporation or its successor in interest and its lessee. In this case, a dispute arose between CMC and Coop over the lease terms of property owned by CMC and leased by Coop. DOT reviewed the controversy and issued an order establishing just and equitable terms for the lease between CMC and Coop. The DOT's actions complied with the authority granted to it under section 327G.62; it did not exceed its authority.

VIII. *Disposition.* All other issues raised have been considered and we find them without merit or unnecessary to discuss.

We conclude section 327G.62 is constitutional as applied in this case and that the DOT acted properly in establishing the lease terms between CMC and Coop. The district court judgment is affirmed.

AFFIRMED.